J-A10023-13

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSE VARGAS, | |
| Appellant | No. 1461 EDA 2012 |

Appeal from the Judgment of Sentence of January 5, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1300045-2006

BEFORE: STEVENS, P.J., OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.: **FILED FEBRUARY 27, 2015**

Appellant, Jose Vargas, appeals from the judgment of sentence entered on January 5, 2012, following his jury trial conviction for possessing a controlled substance with the intent to deliver (PWID), 35 P.S. § 780–113(a)(30). This case is before this Court following a remand from the Pennsylvania Supreme Court. On July 3, 2013, relying upon our *en banc* decision in **Commonwealth v. Castro**, 55 A.3d 1242 (Pa. Super. 2012) (*en banc*), we granted Appellant's request to vacate his judgment of sentence and remanded for additional proceedings based upon after-discovered evidence. Subsequently, on June 16, 2014, the Pennsylvania Supreme Court held that a newspaper article containing allegations of corruption against an investigating officer does not constitute new evidence. **See Commonwealth v. Castro**, 93 A.3d 818 (Pa. 2013). Thus, on September

_____
* Retired Senior Judge assigned to the Superior Court.

24, 2014, the Supreme Court entered an order vacating our decision to grant relief on Appellant's after-discovered evidence claim and remanded this matter for further proceedings. Thus, we will proceed to address the substantive merits of Appellant's original appellate claims.

First, we summarize the facts and procedural history of this case as follows. Officer Thomas Liciardello, the assigned officer in the narcotics investigation, received information from a confidential informant that a man named "Goldo," a heavyset Hispanic male, was selling heroin from a bar in Philadelphia called La Tierra Caribe,[1] located at Lee and Tiago Streets. The informant further told police that Goldo would be delivering a large amount of heroin on March 21, 2006 in the Huntington Park area of Philadelphia in a black Ford Explorer SUV.

On March 21, 2006, Officer Liciardello set up surveillance, in an unmarked police car, at the corner of J Street and Huntington Park Avenue, near a Pep Boys automotive center. Officer Liciardello saw Goldo, later identified as Emilio Gonzales, drive an SUV into the Pep Boys parking lot at the arranged time; Appellant was a passenger. Officer Liciardello saw Appellant get out of the SUV, approach a white PT Cruiser, have a

---

[1] Upon review of the record, the bar is referred to as both "La Tierra Caribe" and "La Crib Bar." *See* N.T., 11/13/2007, at 15. We adopt the trial court's spelling throughout this memorandum.

conversation with an unknown Hispanic male, and get back into the SUV, which drove away.

Officer Liciardello also assigned Officer Barrington Clahar to conduct surveillance at La Tierra Caribe. After leaving the Pep Boys, Officer Clahar saw the SUV pull up in front of La Tierra Caribe and watched Appellant go inside. Appellant came out with another male. Both men went across the street. The other male went into the store and when he emerged, he handed something to Appellant. Appellant got into the SUV and Goldo drove away. Officer Clahar relayed this information to Officer Liciardello.

Officer Liciardello followed the SUV. Officer Liciardello observed Appellant reach into the backseat behind the driver. Officer Liciardello radioed for Officer John Coats, who was driving a marked police cruiser, to conduct a traffic stop of the SUV. Police removed Goldo and Appellant from the area. Police summoned a drug-detecting canine to the scene. The dog alerted police to all four doors of the vehicle, as well as the trunk. Officer Liciardello obtained a search warrant for the SUV and La Tierra Caribe.

When Officer Robert Billips executed the search warrant for the SUV, he uncovered 69.26 grams[2] of heroin under the cushion of a child seat, located in the backseat on the driver's side. Police arrested Appellant

---

[2] At trial, Officer George Burgess testified that the heroin recovered has a street value of between $23,000.00 and $24,000.00.

following the recovery of narcotics. In a search incident to his arrest, police found $300.00 on Appellant's person.

Police executed the search warrant for La Tierra Caribe. On the second floor, police observed a man named Pedro Rondon run through, and lock, a door that connected to the residential property next door. Officer Liciardello forced open the door and pursued Rondon. Officer Liciardello secured the area and saw what was described as a grinder for narcotics on a bed where Rondon was sitting. Police obtained a search warrant for the residence and later uncovered, among other things, bulk heroin, drug paraphernalia, and a photograph of Appellant.

On November 1, 2010, a jury trial commenced. On November 5, 2010, the trial court declared a mistrial because the jury could not reach a unanimous decision. On September 23, 2011, a second jury trial ensued. On September 27, 2011, a jury convicted Appellant of PWID, in relation to the heroin recovered from the SUV. On January 5, 2012, the trial court sentenced Appellant to four to 10 years of imprisonment, followed by six years of probation. This timely appeal followed.[3]

_____

[3] Appellant filed a post-sentence motion on January 13, 2012. The motion was denied by operation of law on May 15, 2012. Appellant filed a notice of appeal on May 17, 2012. On May 29, 2012, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on June 14, 2012. On July 23, 2012, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a). On March 26, 2013, after the conclusion of the appellate briefing schedule in
*(Footnote Continued Next Page)*

- 4 -

On appeal, Appellant presents the following issues for our review:

1. Whether the warrantless arrest of [Appellant] was illegal and required suppression of all evidence confiscated after his illegal arrest, and whether police improperly detained [Appellant], which required the suppression of any evidence seized after his detention?

2. Did the Commonwealth establish facts that would allow the fact-finder to decide whether [Appellant] constructively possessed the heroin found in the [SUV] in which he was a passenger?

3. Was the presentation of testimony relating to a picture of [Appellant] found near contraband in the building at 121 Tioga Street unduly prejudicial when the photograph was not itself presented into evidence and [Appellant] had no connection to the residence where the photograph was located?

Appellant's Brief at 5.[4]

In his first issue presented, Appellant argues that the trial court erred by failing to grant suppression of the evidence obtained. *Id.* at 10. His challenge is two-fold.[5] First, Appellant argues that the police lacked reasonable suspicion that he was engaged in criminal activity to conduct an

_____

*(Footnote Continued)* ——————

this matter, Appellant filed a motion to remand pursuant to Pa.R.Crim.P. 720, requesting a new trial or an evidentiary hearing on after-discovered evidence. As previously stated, we granted relief, but the Supreme Court vacated our decision based upon its subsequent decision in *Castro* and remanded the matter.

[4] We have reordered Appellant's issues as presented to correspond with the argument section of his brief.

[5] For ease of discussion, we have inverted the two parts of Appellant's challenge.

investigatory detention. *Id.* at 16-18. Appellant contends that the police lacked reasonable suspicion that criminal activity was taking place based solely upon "very limited information from a confidential informant that was not reliable on his own" and "the other actions [police] observed could not lead a person to believe that [Appellant] was doing anything criminal at the time the traffic stop was made." *Id.* at 16-17. Appellant argues that the confidential informant was unreliable because: (1) any tips given to police by the same informant, but after the incident herein, were irrelevant; (2) the informant provided no information that resulted in prior convictions; and, (3) the investigating officer in this case gave non-specific and vague answers regarding past dealings with the confidential informant. *Id.* at 13-14.

Our standard of review is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our [*de novo*] review.

***Commonwealth v. McAdoo***, 46 A.3d 781, 783-784 (Pa. Super. 2012) (citation omitted).

The Fourth Amendment of the Federal Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. Amend. IV. Likewise, Article I, Section 8 of the Pennsylvania Constitution states, "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures...." Pa. Const. Art. I, § 8. Under Pennsylvania law, there are three levels of encounter that aid courts in conducting search and seizure analyses:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Carter***, 2014 PA Super 265, at *3.

Further, we have previously determined:

> The Fourth Amendment permits brief investigative stops ... when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. It is axiomatic that to establish reasonable suspicion, an officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. Unlike the other amendments pertaining to criminal proceedings, the Fourth Amendment is unique as

it has standards built into its text, *i.e.,* reasonableness and probable cause. However, as the Supreme Court has long recognized, ***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868 (1968) is an exception to the textual standard of probable cause. A suppression court is required to take into account the totality of the circumstances-the whole picture. When conducting a ***Terry*** analysis, it is incumbent on the suppression court to inquire, based on all of the circumstances known to the officer *ex ante,* whether an objective basis for the seizure was present.

***Id.*** (most internal citations and all quotations and brackets omitted).

Additionally,

[t]he determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. In assessing the totality of the circumstances, a court must give weight to the inferences that a police officer may draw through training and experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer. […] [R]easonable suspicion does not require that the activity in question must be unquestionably criminal before an officer may investigate further. Rather, the test is what it purports to be—it requires a *suspicion* of criminal conduct that is reasonable based upon the facts of the matter.

***Id.*** at 1000 (2014) (citations and quotations omitted)(emphasis in original).

In this case, the trial court "found that [Appellant's] behavior at the bar at 119 East Tioga Street and at the store at 118 East Tioga Street was consistent with information obtained from a confidential informant that heroin was stored at these locations and was being transported inside the Ford Explorer in which [Appellant] was the passenger." Trial Court Opinion,

7/23/2012, at 9. Thus, the trial court concluded, "the police had sufficient reason to stop the vehicle and obtain a search warrant." *Id.* Based upon our standard of review and the totality of the evidence presented, we agree.

At the suppression hearing, the Commonwealth presented the testimony of Officer Thomas Liciardello. He testified that he set up surveillance in a Pep Boys parking lot at J. and Hunting Park based upon "information from a reliable confidential informant." N.T., 11/13/2007, at 13. The confidential informant had previously given Officer Liciardello information leading to prior arrests and "large confiscations of primarily heroin." *Id.* at 14. The confidential informant stated that a Hispanic male, "that goes by the name Goldo" "was going to be delivering a hundred grams of heroin" on the day in question and "that Goldo operates out of a bar located on the Northeast corner of Lee and Tioga" Streets. *Id.* at 15. The confidential informant was with Officer Liciardello at the time of surveillance and positively identified Appellant and Goldo. *Id.* at 18. Officer Liciardello witnessed Appellant as he "exited the Ford Explorer, walked over to a Hispanic male who was in a white PT Cruiser. They had a conversation, at which time [Appellant] entered back into the Ford Explorer, and was followed [by police] to the area of Lee and Tioga, at which time backup officers were conducting surveillances in that area." *Id.* at 13.

The Commonwealth also presented the testimony of Officer Barry Clahar. Officer Clahar testified that he observed Appellant get out of the Ford Explorer and enter the bar at 119 East Tioga Street where he remained

for "five or ten minutes." *Id.* at 46. Appellant "exited the bar in the company of a Hispanic male wearing a striped shirt." *Id.* The two men crossed the street, the Hispanic male went into a store, and five minutes later reemerged and "handed [Appellant] something." *Id.* at 47. Officer Clahar testified that it was a hand to hand passing of small item, but he could not determine what it was. *Id.* at 50. "[B]oth males went back into the bar." *Id.* at 47. Officer Clahar testified that "[a]bout five or ten minutes later" he observed Appellant leave the bar, enter the Ford Explorer, and drive away. *Id.*

Officer Liciardello continued the investigation at this point. He stated:

> Information was relayed to me by Police Officer [Clahar] to follow the Ford Explorer.
>
> While following it up B [S]treet, I observed [Appellant], at which time he reached behind the driver side of the vehicle, appeared to be placing something behind the driver side seat area. At which time, I relayed information to uniform[ed] officers to stop the vehicle. The vehicle was stopped. The males were secured and [a] K-9 [unit] was notified. [….] The dog had a positive reaction to all four doors and the trunk area of that vehicle.

*Id.* at 16-17. Accordingly, Officer Liciardello obtained a search warrant for the Ford Explorer. *Id.* at 17. The parties stipulated to Officer Liciardello's "expertise and experience in the field of narcotics." *Id.* at 51.

Based upon the totality of the foregoing circumstances, we agree with the trial court that police had reasonable suspicion that criminal activity was afoot to detain Appellant for investigation. Police had information from a

confidential informant, who had provided reliable information in the past, that heroin sales were being conducted at La Tierra Caribe and transported in a black Ford Explorer. Moreover, the confidential informant positively identified Appellant at the time of surveillance. Appellant was seen entering and exiting both the bar and the vehicle. At various points, Appellant engaged in a conversation through an open car window and was seen handing a small item to another man. The police observed Appellant reaching behind the driver, described by police as placing an item in the rear seat area. Thus, police were able to corroborate the information provided by the confidential informant based upon their own observations. While certain facts may appear to be innocent, in totality there was reasonable suspicion to conclude that Appellant was engaged in narcotic sales to justify a traffic stop for an investigatory detention.

Moreover, this Court has previously determined:

> A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy. Standing requires a defendant to demonstrate one of the following: (1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element the element of possession; or (4) a proprietary or possessory interest in the searched premises. A defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized. Whether a defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion. The determination whether a defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant.

Generally, under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search. However, in order to prevail, the defendant, as a preliminary matter, must show that he had a privacy interest in the area searched.

An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

In [**Commonwealth v. Burton**, 973 A.2d 428, 435 (Pa. Super. 2009) (*en banc*)], the car that the defendant had been driving, and which was later searched by the police, was neither owned by the defendant nor registered in his name. Because the defendant did not present any evidence at the suppression hearing that he was using the vehicle with the authorization or permission of the registered owner, or otherwise explain his connection to the vehicle or its owner, this Court held that the defendant failed to demonstrate that he had a reasonably cognizable expectation of privacy in the vehicle.

**Commonwealth v. Powell**, 994 A.2d 1096, 1104 (Pa. Super. 2010) (internal citations, quotations, and original brackets omitted).

Here, Appellant was charged with a possessory offense and has automatic standing to challenge the search. However, the Commonwealth presented evidence that the vehicle in question was registered to a person named Casimiro Mejia. N.T., 9/23/2011, at 36. There was "no owner or leasing information tying that car to [Appellant.]" **Id.** at 48. Moreover, Appellant concedes that he did not own the vehicle. Appellant's Brief at 19. There was only one other person in the vehicle at the time of the police stop,

- 12 -

the driver, Emilio Gonzalez. N.T., 9/23/2011, at 48. Appellant did not present any evidence that he was using the vehicle with the authorization or permission of the registered owner nor did he otherwise demonstrate his connection to the vehicle or its owner. Since he has not established an expectation of privacy in the vehicle, Appellant could not prevail on his suppression motion for this additional reason. Thus, we find the trial court did not err in failing to grant suppression.[6]

In the second part of Appellant's challenge to the trial court's denial of suppression, Appellant contends he "was placed under arrest before any warrants were issued and without probable cause." Appellant's Brief, at 11. More specifically, Appellant claims that after the police pulled over the vehicle in which Appellant was riding, but "before the canine unit arrived to inspect the interior of the vehicle[,]" he was arrested. *Id.* at 11. He claims police took him into custody without "his consent, they handcuffed him, transported him to the police station, and claimed that they did this for his safety and to continue their investigation" despite the fact that "exigent circumstances" were lacking. *Id.* at 12. In the alternative, while Appellant concedes that "police were observing [Appellant's] actions on the day of his arrest[,]" he argues "the Commonwealth was not able to establish grounds

---

[6] "We note that this court may affirm the decision of the trial court if there is any basis on the record to support the trial court's action; this is so even if we rely on a different basis in our decision to affirm." ***Commonwealth v. O'Drain***, 829 A.2d 316, 322 (Pa. Super. 2003).

for a finding of probable cause by introducing evidence of what was observed prior to [Appellant's] arrest." *Id.* at 14. As previously mentioned, Appellant argues that the confidential informant was unreliable. *Id.* at 13-14. He claims the testifying officer observed "only one exchange of an unknown item or items without any money changing hands" and "did not comment on whether he felt it was suspicious." *Id.* at 15. Appellant claims that evidence, found after the various search warrants were executed on Tioga Street, was uncovered after his arrest and not subject to the probable cause analysis. *Id.* at 16.

Upon review of the record, we reject Appellant's claim that he was arrested without probable cause. In *Commonwealth v. Johnston*, 530 A.2d 74 (Pa. 1987), our Supreme Court held that use of a trained dog to sniff for the presence of drugs was, under Article 1, Section 8 of the Pennsylvania Constitution, a search. "The rules set down in *Johnston* were that in order for police to conduct a canine search of a place, they must be able to articulate reasonable grounds for believing that drugs may be present in the place they seek to test; and they must be lawfully present in the place where the canine sniff is conducted." *Commonwealth v. Martin*, 626 A.2d 556, 559 (Pa. 1993). In this case, we have determined that police had reasonable suspicion to believe that narcotics would be found in the Ford Explorer SUV. Further, they were at a lawful vantage point outside of the vehicle when it was conducted. Once a canine unit detects narcotics,

reasonable suspicion ripens into probable cause. ***Commonwealth v. Rogers***, 849 A.2d 1185, 1192 (Pa. 2004).

Appellant's detention while police waited for the canine unit was legal. In ***Commonwealth v. Ellis***, 662 A.2d 1043 (Pa. 1995), our Supreme Court was called upon to decide a similar issue. Therein, police stopped Ellis in a vehicle in which he was riding upon suspicion that he had been involved in a burglary. He was detained so that another officer could arrive to compare footprints found at the scene of the crime with Ellis' shoe and for an eyewitness to make an identification. Relying upon the United States Supreme Court decision in ***United States v. Sharpe***, 470 U.S. 675, (1985), the ***Ellis*** Court determined that a key factor to be examined is whether "the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." ***Ellis***, 662 A.2d at 1048.

Moreover, our Supreme Court has determined "that safety and security concerns may justify moving a suspect during an investigative detention." ***Commonwealth v. Revere***, 888 A.2d 694, 703 (Pa. 2005), *citing* ***Florida v. Royer***, 460 U.S. 491, 499, (1983) (plurality opinion) ("there are undoubtedly reasons of safety and security that would justify moving a suspect from one location to another during an investigatory detention").

At the suppression hearing, Officer Liciardello testified that the canine unit was employed within an hour of the traffic stop. N.T., 11/13/2007, at

43.   Appellant was handcuffed and transported to the 25th District police station.  *Id.* at 42.  Officer Liciardello testified that he removed Appellant from the scene for Appellant's safety and police safety, because:  (1) it was a high traffic area, and; (2) the Tioga properties under investigation were nearby and Officer Liciardello was concerned that someone might see the detention and jeopardize the rest of the investigation.  *Id.* at 43.  Under the foregoing circumstances, we find Appellant's detention proper and suppression was unwarranted.

In his second issue presented, Appellant argues that the Commonwealth failed to present sufficient evidence that he constructively possessed the narcotics recovered from the vehicle.  Appellant's Brief at 18.  In sum, he maintains:

> Here, the record during trial is devoid of proof concerning [Appellant's] constructive possession of the heroin found in the car seat of the Ford Explorer. [Appellant] did not own the vehicle, there was no testimony concerning who owned the child car seat in the back seat, and he was only a passenger in the car.  The heroin was found in the rear seat in between the base and a cushion of a child's car seat.  This was an accessible area to the driver of the vehicle, who spent more time in the vehicle than [Appellant] during the events observed by police.  Gonzalez, the driver, did not leave the Ford Explorer throughout the entire sequence of events prior to the arrest.  He had access to the car seat and the entire interior of the vehicle.  The only evidence that [Appellant] had dominion or exercised control over the heroin was one movement consisting of turning around, which Officer Liciardello observed.  The officer could not see what [Appellant] was doing, and this one point in time does not erase the fact that Gonzales had equal access throughout.  Just [] because another individual had many opportunities to place the heroin in the area

- 16 -

searched and because the area was easily accessible to another, constructive possession has not been established.

*Id.* at 19. Finally, Appellant suggests "[p]olice could have easily fingerprinted the package of heroin, but did not." *Id.*

When reviewing challenges to the sufficiency of the evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa. Super. 2014) (citations and brackets omitted). "Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Id.* (citation omitted).

As Appellant was not in physical possession of the contraband, the Commonwealth was required to establish that he had constructive possession of the seized items to support his convictions:

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

Additionally, it is possible for two people to have joint constructive possession of an item of contraband.

***Commonwealth v. Kinard***, 95 A.3d 279, 292 (Pa. Super. 2014) (citations omitted).

In this case, viewing the totality of the circumstances, the trial court determined the Commonwealth established Appellant's constructive possession, based upon the following facts:

[Appellant's] conduct in the PEP Boys parking lot which [Officer] Liciardello, based upon his training and knowledge of the community, concluded was consistent with drug trafficking; [Officer] Clahar's information based upon his observations when the Ford Explorer arrived at the location of his surveillance, and [Officer] Liciardello's observation of [Appellant] reaching into the backseat of the vehicle. Further, when arrested and searched, [Appellant] was found to have $300[.00] in cash on his person.

Trial Court Opinion, 7/23/2012, at 9.

- 18 -

Upon review of the record, we agree. Initially, we summarily reject Appellant's contention that the owner and/or driver of the car had more accessibility to the narcotics and Appellant was a mere passenger. Two people may have joint constructive possession of contraband. *See Kinard*. "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Id.* Here, police engaged in narcotics surveillance and confirmed Appellant's activities as consistent with narcotic sales. Police ultimately recovered heroin from the back seat of the Ford Explorer, under a car seat, in the same vicinity where police saw Appellant reaching earlier. N.T., 10/23/2011, at 69-70. Police recovered $300.00, in smaller denominations, from Appellant's person in a search incident to his arrest. *Id.* at 36-37. All taken together, these facts demonstrate that Appellant exercised conscious dominion, and the intent to exercise that control, over the heroin. Accordingly, Appellant's second issue is without merit.

In his last issue presented, Appellant argues that the trial court erred by admitting, at trial, testimony regarding a photograph of Appellant recovered from 121 Tioga Street. Appellant's Brief at 20. Before we examine Appellant's claim, some factual background is necessary. As previously stated, upon execution of a search warrant at 121 Tioga Street, police recovered a personal photograph of Appellant pictured with another male and a female. On November 2, 2010, the photograph was admitted into evidence at Appellant's first trial, which ended with a hung jury and a

mistrial. *See* N.T., 11/2/2010, at 81. On September 23, 2011, prior to the beginning of Appellant's current trial, defense counsel presented an oral motion *in limine* "to exclude alleged observations" of Appellant in relation to the properties subjected to the police searches. N.T., 9/23/2011, at 5. Defense counsel argued that Appellant "was not observed inside the property that drugs were found" and that Appellant had an attenuated connection with 121 Tioga Street. *Id.* at 5. The Commonwealth argued "that the jury should be allowed to consider the investigation as a whole, not just the car stop in a vacuum to understand that [Appellant] was involved in the delivery of narcotics." *Id.* at 6. The trial court denied Appellant relief. *Id.* at 7.

At trial, the Commonwealth presented Officer Liciardello with a property receipt of the items recovered from 121 Tioga Street and began questioning him about it. *Id.* at 39-40. On cross-examination, Officer Liciardello conceded that the only evidence linking Appellant to the property was the photograph police recovered. *Id.* at 57. At this point, Officer Liciardello testified that he was the evidence custodian and the photograph had gone missing. *Id.* Defense counsel proceeded to question Officer Liciardello about the photograph. *Id.* at 58-59. When Officer Liciardello could not recall details of the photograph, defense counsel refreshed his recollection with testimony from the trial transcripts from Appellant's first trial. *Id.* at 60-61. After Officer Liciardello was excused, defense counsel requested a mistrial at sidebar because the evidence was missing. *Id.* at

74. In the alternative, defense counsel requested a curative instruction. *Id.* The trial court denied relief. *Id.* at 75. At a sidebar, after the Commonwealth rested, defense counsel stated:

> That brings me to another objection that I must restate, and I know the [c]ourt overruled it. I objected and asked for a mistrial and, in the alternate, a curative instruction requesting the jury to disregard any testimony regarding this photograph. The reason for that is that it has been testified about as physical evidence and yet it [has not] appeared. The only thing that matters is that it's not here.
>
> I would base my objection on the Best Evidence Rule. This jury is entitle[d] to review the photograph and determine for themselves whether or not [Appellant] even appears in the photograph. We know the Commonwealth will use that photograph to link him to these other activities and other properties.
>
> It matters not one bit whether this photograph was present in the courtroom before because this jury was not present in the courtroom before. This is a jury asked to make a decision now. That decision will very seriously consider testimony about a photograph that has not been provided at this trial and this jury has not observed.

*Id.* at 127-128. The trial court denied relief. *Id.* at 129.

On appeal, Appellant asserts the photograph was inflammatory and prejudicial because he was not charged "with possession of any of the drugs or paraphernalia found in that building" and "the Commonwealth never established who the other people in the picture were, or attempt[ed] to establish a relationship" between them. *Id.* He claims the Commonwealth was "simply attempting to show guilt by association." *Id.* at 21. Appellant concludes that the "photograph gave the impression that the accused was a

bad person with bad connections" and "[i]t had no other value to the case." **Id.** We find this issue waived.

The photograph in contention was missing and, therefore, it was not admitted at trial. The Commonwealth elicited testimony that the photograph was listed on the police property receipt as an item recovered from 121 Tioga Street. Appellant did not object. Likewise, Appellant did not object when he discovered that the actual photograph was missing and would not be presented. Instead, Appellant put the issue squarely before the jury when defense counsel read excerpts from the prior trial pertaining to the photograph into the current record. As such, Appellant was instrumental in placing that evidence before the jury. Accordingly, Appellant can hardly complain now that testimony concerning the photograph is prejudicial to him. Moreover, Appellant objected only after Officer Liciardello finished testifying and, again, after the Commonwealth rested. Not only were Appellant's objections belated, but his complaints were that the photo was missing and testimony about it was not the best evidence, not that the prejudice outweighed the probative value. "A defendant must make a timely and specific objection at trial or face waiver of her issue on appeal." **Commonwealth v. Olsen**, 82 A.3d 1041, 1050 (2013). Appellant's objection was untimely and on a different basis. Hence, we are constrained to find the issue waived.

Finally, we address Appellant's second motion to remand to the trial court based upon after-discovered evidence filed with this Court on

November 10, 2014. Appellant claims that, on August 6, 2014, he learned that Officer Thomas Liciardello was indicted by a grand jury in the United States District Court for the Eastern District of Pennsylvania on charges of conspiracy, robbery, extortion, possession with intent to deliver cocaine, and falsification of records. Accordingly, pursuant to Pa.R.Crim.P. 720, Appellant filed his motion to remand with an attached copy of the indictment. Appellant avers that the indictment "demonstrates that Thomas Licariardello was not competent to testify, and that the conviction of Appellant was a miscarriage of justice." Appellant' Second Motion to Remand, 11/10/2014, at ¶ 11.

We look to the facts of the *Castro* decision for guidance. As a previous panel of this Court noted:

> The Supreme Court granted review in *Castro* to decide the following issue: "Is it possible to meet the test for after-discovered evidence where the defendant proffers no evidence, but instead relies on a newspaper article?" *Castro*, 93 A.3d at 824. After agreeing with the parties that the newspaper article at issue was not itself evidence, but rather a collection of "allegations that suggest such evidence may exist," *id.* at 825, the Court went on to offer the following guidance about what is required of a criminal defendant making an after-discovered evidence claim.
>
> > We decline to impose a strict requirement that the proponent of a Rule 720 motion attach affidavits or other offers of proof; the rule does not contain express language requiring this, in contrast to the rules pertaining to PCRA petitions. However, we hold a motion must, at the very least, describe the evidence that will be presented at the hearing. Simply relying on conclusory accusations made by another, without more, is insufficient to warrant a

- 23 -

> hearing. The article here mentioned individuals who may have been relevant witnesses in the end, as well as a video tape and an ongoing investigation regarding [one of the allegedly corrupt police officers]. The motion says nothing about which, if any, of this potential evidence appellee would rely on to support his request for a new trial. Absent identification of the actual testimony, physical evidence, documentation, or other type of evidence to support the allegations of [police] wrongdoing, we cannot conclude appellee had evidence to offer; to conclude otherwise would be speculation.

*Commonwealth v. Perrin*, 2015 PA Super 4, at *3-4, *citing* **Castro**, at 827 (footnote omitted).

Upon review of the motion to remand, and accompanying indictment, Appellant is not entitled to relief. The indictment lists 22 specific cases of alleged police wrongdoing; Appellant's case is simply not one of them. Hence, Appellant has not identified actual testimony, physical evidence, documentation, or other evidence to support allegations of Officer Licairdello's wrongdoing in this particular matter. Appellant, instead, argues that general evidence of Officer Licairdello's alleged wrongdoing would be used to test his veracity. However, "a defendant seeking a new trial must demonstrate he will not use the alleged after-discovered evidence solely to impeach the credibility of a witness." ***Commonwealth v. Padillas***, 997 A.2d 356, 365 (Pa. Super. 2010) (citation omitted). Thus, we conclude that Appellant has not presented after-discovered evidence.

Motion to remand denied. Judgment of sentence affirmed. Jurisdiction relinquished.

President Judge, now Justice, Stevens did not participate in this decision.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/27/2015