93 A.3d 818

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Jose CASTRO, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 11, 2013.

Decided June 16, 2014.

584

Hugh J. Burns Jr., Esq., Mary L. Huber, Esq., Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

Karl Baker, Esq., Bradley Steven Bridge, Esq., Owen W. Larrabee, Esq., Defender Association of Philadelphia, for Jose Castro.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice EAKIN.

In this appeal, we are asked to determine whether a newspaper article submitted as the sole support for a motion for new trial on the basis of after-discovered evidence warrants the grant of a hearing. Finding allegations in an article do not constitute evidence, we reverse the Superior Court's order remanding for a hearing on appellee's after-discovered evidence claim.

Trial testimony established that on March 11, 2008, Officer Richard Cujdik of the Philadelphia Narcotics Field Unit gave pre-recorded money to a confidential informant (CI–142), who entered appellee's home to purchase drugs. CI–142 spoke with Yvette Torres at the door, went inside, and returned a few minutes later with two clear, red-lidded jars of PCP. Officer Cujdik used this transaction as probable cause in an application for a search warrant, which was issued and executed later that day. Officer Cujdik stationed himself at the rear of the property while other officers knocked on the front door. After the knock, Officer Cujdik saw appellee run out the back door and toss a clear plastic baggie into the neighboring yard. While other officers apprehended appellee, Officer Cujdik retrieved the baggie, which contained five clear glass jars of PCP, two of which had red lids like those purchased earlier by CI–142.

Appellee was arrested and charged with knowing and intentional possession of a controlled substance,[1] possession with intent to deliver a controlled substance (PWID),[2] and conspiracy with Torres to commit PWID.[3] At appellee's bench trial, the Commonwealth presented Officer Cujdik's testimony, money seized from Torres, and the drugs. The trial court found appellee guilty of conspiracy and possession of a controlled substance, but not guilty of PWID. Appellee was sentenced to six to 23 months imprisonment followed by two years probation for conspiracy, and a concurrent six to 23 months imprisonment and one year of probation for possession.

On March 30, 2009, four days after the trial, the Philadelphia Daily News published an article alleging police misconduct by Officer Cujdik, his brother (also a narcotics officer), and other officers during a raid of a convenience store in 2007. In the article, the store's owner alleged the officers entered his business to execute a search warrant and confiscated the store's surveillance cameras, which they claimed contained

1. 35 P.S. § 780–113(a)(16).
2. *Id.,* § 780–113(a)(30).
3. 18 Pa.C.S. § 903(a)(1); 35 P.S. § 780–113(a)(30).

evidence he was selling drug paraphernalia.[4] According to the owner, the officers cut the wires to the cameras, confiscated them, and stole $10,000 in cash as well as cigarettes and other inventory; the article averred the property receipt the officers filed reported a fraction of that amount of cash, and the cameras were not listed on the receipt. The article further indicated the owner recovered ten minutes of video footage from a back-up surveillance system, which showed the officers cutting the wires to a camera. No footage showed the alleged looting of the store. The article stated Officer Cujdik's affidavit for the warrant averred that a confidential informant[5] purchased drug paraphernalia at the store two and a half hours before the raid, and alleged that video from this time period did not show anyone purchasing such items.

The article also stated Officer Cujdik's brother was the subject of federal and local investigations stemming from allegations he lied on search warrants to gain access to suspected drug homes and became too close with his informants. The article indicated eight other convenience store owners said the same officers disabled their stores' video cameras, stole inventory, and confiscated cash without reporting the full amount on the property receipt, and stated when this information was published in an earlier article on March 20, six more store owners, including the one featured in the instant article, contacted the reporter and described similar incidents.

Appellee filed a post-sentence motion for a new trial on the basis of after-discovered evidence based solely on the newspaper article that stated Officer Cujdik was under investigation for corruption and falsification of evidence in another case involving the same confidential informant. The motion stated:

1. [Appellee] was arrested on March 11, 2008 by Phila-

---

4. Drug paraphernalia includes items used to package small quantities of controlled substances. 35 P.S. § 780–102(b). The paraphernalia in question were zip lock bags.

5. The article did not identify the informant, but the affidavit identified him as CI–142.

delphia Police Officer Richard Cudjik [6] badge number 3262 and charged with PWID, [c]onspiracy and [k]nowing and [i]ntentional [p]ossession.

2. On March 26, 2009 this [c]ourt sitting without a jury found [appellee] guilty of [c]onspiracy as to the PWID charge and of [k]nowing and [i]ntentional [p]ossession while finding him not guilty of PWID.

3. On that date prior to trial, counsel was not aware that *[O]fficer Cudjik was under investigation for among other things improper use of Confidential Informant 142.*

4. *This case involves information from the use of Confidential Informant 142 as probable cause to obtain a search warrant.*

5. *Subsequent to the date of trial on March 30, 2009, the Philadelphia Daily News published an article (copy attached as Exhibit A) detailing an untruthful affidavit based on information supposedly given to [O]fficer Cudjik by Confidential Informant # 142 as to sales of paraphernalia at a store owned by one Jose Moran at 7301 N. 20th Street. That affidavit alleges a sale at 4:30 p.m. on September 11, 2007 whereas a viewing of the video tape for the period between 4:00 o'clock and 5:00 o'clock P.M. in the store shows no such sale.*

6. The facts adduced at trial do not show that [appellee] was in the house at the time a sale was made to the informant but only that he was present some five hours later at the time the search warrant was executed.

7. Therefore the conspiracy would not go to the PWID charge but rather, if at all to the possession charge.

WHEREFORE [appellee] requests that he be [g]ranted a [n]ew [t]rial on [k]nowing and [i]ntentional [p]ossession and [c]onspiracy as to [k]nowing and [i]ntentional [p]ossession only.

Post–Sentence Motion, 6/24/09, at 1–2 (emphasis added).

 Following a brief hearing, the trial court denied appellee's motion for a new trial. Appellee filed a notice of appeal,

---

**6.** The correct spelling of the officer's surname is Cujdik.

and in its Pa.R.A.P. 1925(a) opinion, the trial court explained appellee had not met the requirements for a new trial on the basis of after-discovered evidence: "Although the proposed evidence satisfies some of the prongs required for a new trial, the evidence lacks a purpose for admission independent from impeaching the credibility of the officer." [7] Trial Court Opinion, 5/17/10, at 9. A divided panel of the Superior Court vacated appellee's judgment of sentence and remanded for an evidentiary hearing. *See Commonwealth v. Castro*, 2011 WL 2517017 (Pa.Super. June 24, 2011) (withdrawn). The Commonwealth petitioned for reargument *en banc*, which was granted, and the prior panel decision was withdrawn.

In a 5–4 decision, the Superior Court again vacated appellee's conviction and remanded for an evidentiary hearing. Judge Lazarus, writing for the majority, noted the Superior Court recently addressed the proffer of a news article as the basis for a hearing on after-discovered evidence in *Commonwealth v. Rivera*, 939 A.2d 355 (Pa.Super.2007). In that drug case, a laboratory technician testified to the nature and weight of the drugs as well as the chain of custody. While the case was on direct appeal, the defendant filed a petition for remand based on a newspaper article alleging the laboratory technician was a corrupt witness; the article stated she had been arrested for stealing prescription medications that she was to secure as evidence. The Superior Court applied the after-discovered evidence test and determined the defendant was unlikely to have discovered the article prior to its publication, the evidence was not cumulative because the veracity of the technician's testimony had not been questioned at trial, and

7. The four-prong test for awarding a new trial because of after-discovered evidence is well settled. The evidence: (1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict. *See Commonwealth v. Pagan*, 597 Pa. 69, 950 A.2d 270, 292 (2008) (citations omitted). The trial court, referring to the March 30 newspaper article as "proposed evidence," did not address the threshold issue of whether the article contained evidence or was itself sufficient to support a motion for new trial. Instead, the court treated the allegations in the article as evidence, but concluded they failed to meet the third prong of the test.

the evidence could be offered for a non-impeachment purpose (*i.e.,* the evidence called into question the type and amount of drug upon which the conviction and sentence were based). *See id.,* at 359. The court remanded for an evidentiary hearing to determine if a new trial was required on the basis of this evidence.

In *Commonwealth v. Estepp,* 17 A.3d 939 (Pa.Super.2011), *appeal dismissed* as *improvidently granted,* 617 Pa. 601, 54 A.3d 22, 23 (2012) (*per curiam* ), trial testimony established Officer Cujdik's brother, Officer Jeffrey Cujdik, conducted a controlled buy of drugs from the defendant's home, using a confidential informant. The officer used this as the basis for a search warrant which led to the discovery of drugs in the defendant's home. During the appeal of his conviction, the defendant moved to remand for an evidentiary hearing to investigate allegations of misconduct by the officer. In his motion, the defendant cited two newspaper articles stating the officer was under state and federal investigation for falsifying evidence. The Superior Court found newspaper articles could support a claim of after-discovered evidence, *see id.,* at 943; however, it distinguished *Rivera,* noting the article in that case stated the witness in question had been arrested, whereas the articles in *Estepp* merely stated the witness in question was under investigation. *Id.* (citing *Rivera,* at 357). Accordingly, the court denied relief.

Here, the majority disagreed with *Estepp's* distinction between an arrest and an investigation; the court held that if an article cites independently verifiable evidence to support its allegations of corruption, the absence of an arrest or conviction does not preclude relief. *Commonwealth v. Castro,* 55 A.3d 1242, 1247, 1249 (Pa.Super.2012) (*en banc* ). The court noted, "[W]e look to the allegations made in the news article to determine whether there is a reasonable likelihood that the verdict would have been different." *Id.,* at 1247 (citation omitted). Applying the after-discovered evidence test, the court held, based on the March 30 article [8] about Officer

8. The majority also noted the Daily News published another article on May 20, 2012, about the ongoing Philadelphia police corruption investi-

Cujdik, the defendant satisfied each element of the test. The court reasoned:

> [T]he evidence in the article could not have been obtained prior to trial by reasonable diligence. . . . Although [the newspapers] had published articles on [Officer Cujdik's brother] prior to [the March 30 article], Castro had no basis for knowing of Officer Richard Cujdik's involvement, and could not have been expected to discover it through reasonable diligence.
>
> [T]he evidence described in the March 30, 2009 news article is not merely corroborative or cumulative of the evidence presented at trial. At trial, Castro did not attack Officer Richard Cujdik's prior conduct because he had no basis to challenge his credibility. Thus, the evidence may be used to attack the veracity of Officer Richard Cujdik's warrant and the evidence surrounding Castro's arrest.
>
> [W]hile the evidence in the . . . article may be used to impeach the credibility of Officer Richard Cujdik, the evidence will not be used solely for that purpose. . . . Castro may use this evidence in filing a motion to compel the identity of CI–142 in order to determine whether Officer Richard Cujdik also made false claims in applying for a warrant to search Castro's home. Additionally, Castro could use the evidence to file a motion to suppress the evidence recovered from the search.
>
> [T]he evidence would likely result in a different verdict if a new trial were granted because it shows that Officer Richard Cujdik, the only witness to testify at Castro's trial, engaged in a pattern of fabricating controlled buys in order to procure and execute search warrants. Significantly, the . . . article provided a link to video surveillance tapes that directly contradict statements made in Officer Richard Cujdik's search warrant affidavit. Further, the confidential informant used in applying for that warrant was the same

gation. The article stated the City of Philadelphia had settled 21 civil lawsuits against Officer Cujdik and his brother at an average of $40,000 per suit and an FBI investigation of the matter was ongoing. *See id.*, at 1249 ("Certainly, upon remand, Castro would be entitled to delve into the nature of these allegations against Officer Richard Cujdik.").

one used to investigate Castro. Thus, *there was evidence, independent from the news article itself,* to support the allegations of corruption against Officer Richard Cujdik. *Id.,* at 1247–48 (internal citations and footnote omitted; emphasis added). The court concluded, although it could not ascertain whether appellee would be able to present enough evidence to warrant vacating his conviction, *"the potential for uncovering exculpatory evidence* makes it more than probable that a trier of fact would come to a different conclusion." *Id.,* at 1249 (emphasis added). Accordingly, the court vacated appellee's judgment of sentence and remanded for an evidentiary hearing on his after-discovered evidence claim.

Then–President Judge Stevens dissented, opining the newspaper article's allegations of Officer Cujdik's misconduct did not constitute evidence. Since appellee offered nothing to support his motion except the article, the court was required to speculate on what evidence he would be able to present at a hearing; therefore, it could not be determined if such potential "evidence" would be used for purposes other than impeachment, and appellee failed to satisfy every prong of the after-discovered evidence test. *See id.* (Stevens, P.J., dissenting). The dissent emphasized that, before applying the after-discovered evidence test, the court must determine "whether [Castro] actually presented *evidence* that is 'producible and admissible.'" *Id.,* at 1250 (emphasis in original) (quoting *Commonwealth v. Chamberlain,* 612 Pa. 107, 30 A.3d 381, 414 (2011)). Pointing out that newspaper articles generally do not constitute evidence because they are largely comprised of inadmissible hearsay, the dissent pointed out the article in this case—offered to prove the truth of its own allegations concerning Officer Cujdik's misconduct—contained a reporter's account of a witness's testimony in another case, which was double hearsay and thus inadmissible. *Id.,* at 1250–51 (citing Pa.R.E. 801–802; *Presbyterian SeniorCare v. Unemployment Compensation Board of Review,* 900 A.2d 967, 978 (Pa. Cmwlth.2006) (finding uncorroborated double hearsay in newspaper article insufficient to establish allegation as fact); *Commonwealth v. Saksek,* 361 Pa.Super. 173, 522 A.2d 70, 72

(1987) (upholding exclusion of newspaper article as inadmissible hearsay)).

The dissent further stated appellee, in conceding the article was not itself evidence but merely provided a basis for believing he may find evidence, "failed to meet the initial hurdle in presenting producible and admissible *evidence* in his petition." *Id.*, at 1251 (emphasis in original) (citation omitted). Finally, the dissent believed *Estepp* was correctly distinguished from *Rivera* on the basis that there was merely an investigation in *Estepp*, contrasted with an arrest—which at least requires probable cause—in *Rivera*. *Id.*, at 1252 (citations omitted). Analogizing the instant case to *Estepp*, the dissent noted the article cited by appellee merely stated Officer Cujdik was under investigation, and "[n]o matter how serious the accusations may be, allegations are not evidence." *Id.*, at 1253. Thus, the dissent would have affirmed appellee's judgment of sentence, holding the trial court's denial of his after-discovered evidence motion was proper.

We granted review to address the following issue:

Is it possible to meet the test for after-discovered evidence where the defendant proffers no evidence, but instead relies on a newspaper article?

*Commonwealth v. Castro*, 619 Pa. 466, 65 A.3d 291 (2013) (*per curiam* ).

The Commonwealth argues a newspaper article cannot by itself support a claim of after-discovered evidence because the information contained therein is not evidence. The Commonwealth claims the Superior Court majority's reference to "the evidence" in the article is a mischaracterization, as after-discovered evidence must be producible and admissible; the article did not describe any actual evidence, and printing information in an article does not make it admissible at trial, even for impeachment purposes. Citing cases pertaining to ineffectiveness of counsel for failure to call witnesses, the Commonwealth posits an after-discovered evidence claim is analogous; it is a collateral attack on the verdict, based on evidence that is not part of the trial record. The Common-

wealth argues that as with such ineffectiveness allegations, claims of after-discovered evidence must be accompanied by an offer of proof, such as affidavits by purported witnesses, not mere conclusory accusations. The Commonwealth contends the majority improperly focused on the article's allegations of corruption, when Officer Cujdik had not been arrested, much less convicted; even an arrest is not admissible for impeachment at trial in any event. *See* Commonwealth's Brief, at 15–16 (collecting cases). Finally, the Commonwealth claims the majority erred in treating extra-record allegations as evidence, and in recognizing the May 20, 2012 newspaper article, which obviously did not exist in 2009.

Appellee counters that he did not offer the March 30, 2009 article as evidence itself, but rather as a description of the new evidence he had discovered, namely, Officer Cujdik's misconduct in another case using the same CI. He asserts the majority's reference to the article's content as "evidence" was not improper, as "evidence" in Pa.R.Crim.P. 720 does not mean evidence in the technical sense (*i.e.*, any species of proof, or probative matter, legally presented at trial), *see* Appellee's Brief, at 20 (quoting Black's Law Dictionary 656 (4th ed. 1968)), but instead encompasses allegations sufficient to warrant an evidentiary hearing to determine their validity. Appellee asserts Rule 720's plain language does not require affidavits be attached to the motion; all it requires is the motion be filed in writing promptly upon discovery of the evidence, in contrast to Pa.R.Crim.P. 902(A)(15)'s stringent requirements regarding a request for an evidentiary hearing on a petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541 *et seq.*[9] Thus, appellee distinguishes the Commonwealth's example of the proof required for collateral relief. He posits the information contained in the article, as described in his motion, demonstrated the competent evidence he would present; this was sufficient to

9. Rule 902(A)(15) requires a request for an evidentiary hearing on a PCRA petition to include a signed certification as to each intended witness, along with their name, address, birthdate, and substance of testimony. Pa.R.Crim.P. 902(A)(15).

warrant an evidentiary hearing, enabling him to show what he would present at a new trial.

Appellee further contests the trial court's finding that the evidence would be offered solely for impeaching the credibility of a witness. He claims that where the evidence would " 'completely destroy and obliterate the testimony of the one witness upon whose testimony the defendant was convicted[,]' " the evidence is not used solely for impeachment, as it goes to the ultimate question in the trial. Appellee's Brief, at 16 (quoting *Commonwealth v. Krick*, 164 Pa.Super. 516, 67 A.2d 746, 749 (1949)) (citing *Commonwealth v. McCracken*, 540 Pa. 541, 659 A.2d 541, 545 (1995); *Commonwealth v. Mosteller*, 446 Pa. 83, 284 A.2d 786, 788 (1971)).

■ As previously stated in n. 7, *supra*, the test for whether a new trial is warranted on the basis of after-discovered evidence is settled. *See Commonwealth v. Montalvo*, 604 Pa. 386, 986 A.2d 84, 109 (2009) (citation omitted); *Pagan*, at 292 (citations omitted); *Commonwealth v. Randolph*, 582 Pa. 576, 873 A.2d 1277, 1283 (2005) (citation omitted). In addition, "the proposed new evidence must be 'producible and admissible.' " *Chamberlain*, at 414 (quoting *Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246, 263 (1988)) (citing *Commonwealth v. Scott*, 503 Pa. 624, 470 A.2d 91, 93 (1983)). While the requirements the proposed evidence must meet are clearly delineated, neither Rule 720 nor its comment address what sort of information qualifies as evidence, nor do they discuss what is needed in terms of an offer of proof.[10]

■ We need not belabor the question of whether a newspaper article is evidence—the parties agree the article

10. Rule 720 provides: "A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). The comment to the Rule states, unlike ineffectiveness claims, evidence discovered during the post-sentence stage must be raised with the trial court, evidence discovered while the case is on direct appeal must be raised then, along with a request for remand to the trial court, and evidence discovered after direct appeal should be raised in the context of the PCRA. *See id.*, 720 cmt.

itself is not evidence.[11] The Superior Court erred in treating the article as containing evidence; the article contains allegations that suggest such evidence may exist, but allegations in the media, whether true or false, are no more evidence than allegations in any other out-of-court situation. Nothing in these allegations, even read in the broadest sense, can be described as "evidence," and references to the officer being under investigation for misconduct contains no information regarding what evidence existed to substantiate this averment. One cannot glean from these bald allegations what evidence of misconduct appellee intended to produce at the hearing. As the articles themselves were not evidence, much less sufficient evidence, we instead focus on whether the information described in the March 30 article can otherwise serve as the basis for appellee's claim.

Appellee's motion avers "[O]fficer Cudjik [sic] was under investigation for … improper use of Confidential Informant 142[,]" Post–Sentence Motion, 6/24/09, at 1 ¶ 3, then references the March 30 article "detailing an untruthful affidavit based on information supposedly given to [O]fficer Cudjik [sic] by Confidential Informant # 142[,]" *id.,* at 1–2 ¶ 5. Thus, one may infer from the motion a suggestion that because Officer Cujdik allegedly fabricated facts concerning the use of CI–142 in the affidavit in the other case, he may have done so in appellee's

11. This Court and the Commonwealth and Superior Courts have held newspaper articles generally do not constitute evidence, as they contain inadmissible hearsay. *See Commonwealth v. Ngow,* 539 Pa. 294, 652 A.2d 305, 306 (1995) (holding newspaper article was insufficient proof that baseball bat was instrument of crime; "proof may not consist of what one hears on the news"), *superseded by statute on other grounds, Commonwealth v. Robertson,* 874 A.2d 1200 (Pa.Super.2005); *Presbyterian SeniorCare,* at 978 (referring to newspaper article as "[u]ncorroborated double hearsay"); *Steinhouse v. Workers' Compensation Appeal Board (A.P. Green Services),* 783 A.2d 352, 356–57 (Pa.Cmwlth.2001) (holding newspaper article regarding indictment of health care provider was inadmissible hearsay, as it was not corroborated by any witness testimony; furthermore, indictment was inadmissible to impeach provider's credibility, as it was prior bad act not resulting in conviction; arrest or indictment do not establish guilt, and are hearsay assertions of guilt); *Saksek,* at 71–72 (upholding exclusion of newspaper article as inadmissible hearsay).

case.[12] Again, however, there is no mention of evidence, merely an inference of a conclusion one might make if such evidence were actually brought forward.

Apparently, the newspaper article attached to the motion was intended to further elucidate the nature of the potential evidence. The article contains the store owner's and his brother-in-law's allegations that Officer Cujdik and his fellow officers engaged in misconduct, and it details the video footage of the officers disabling the store's surveillance system. It also states Officer Cujdik is the subject of a federal and local investigation concerning allegations that he falsified information in affidavits for search warrants, and it contains the Philadelphia Police Commissioner's comments regarding his intention to investigate the matter. Finally, it maintains Daily News reporters watched footage from the store's surveillance video for the time Officer Cujdik's affidavit averred drug paraphernalia was purchased at the store, and no such sales occurred on the video during that time.

All of these allegations, while indeed serious, are merely one reporter's version of a story; indeed, it is double hearsay, as it is the reporter relaying what he or she has been told by another person. As the Superior Court dissent noted, the fact the video from one surveillance camera failed to reveal any drug paraphernalia sales at the times alleged in Officer Cujdik's affidavit only proves the sales were not recorded by that camera; the store had multiple cameras, and its owner was unable to locate footage from the other cameras for the time in question. *See Castro*, at 1252 (Stevens, P.J., dissenting). Furthermore, the video footage of the officers disabling one of the store's cameras is not necessarily evidence of misconduct; the article states the officers told the owner they were confiscating surveillance videos that likely contained footage of the sale of drug paraphernalia. *Id.*, at 1251. In short, things appear suspicious, but that is not proof, and the proffer of the article to point to misconduct by Officer Cujdik required the trial court to "speculate about possible corruption

12. The remainder of the motion argues appellee was not in the house at the time the drug sale occurred, an issue not before us.

that has not been corroborated." *Estepp*, at 943. Speculation is no more valuable than allegation. More than the article is required to prove the veracity of its contents.

Although there is little case law concerning the pleading required for a Rule 720 motion, *Commonwealth v. Brosnick*, 530 Pa. 158, 607 A.2d 725 (1992), is instructive. There, the defendant learned through a newspaper article, published after his conviction for driving under the influence, that then-State Auditor General Don Bailey investigated the company that manufactured items used to test the accuracy of breath-testing machines. The ensuing report attacked the credibility of the machines' certificates of accuracy. The defendant moved for a new trial, citing the report—not the newspaper article—as after-discovered evidence calling into question the reliability of his breath test. The motion was denied, the Superior Court affirmed, and the only issue on appeal was whether the report met the first prong of the test; this Court held it did and remanded for a new trial. *Id.*, at 729–30. The sufficiency of the pleading was not challenged.

Here, as in *Brosnick*, appellee learned of the alleged after-discovered evidence through a newspaper article. In *Brosnick*, however, the defendant pointed to a completed report with factual findings and official conclusions, not a reporter's abridged version of allegations. Unlike *Brosnick*, there was no such end product here, no published report, no findings made, no charges filed. While newspaper articles can alert a party to the possible existence of evidence, the party must do more than attach the article as establishing the evidence that will meet the four-pronged test.[13]

13. As concerns the test, we disapprove of the Superior Court's pronouncement cited above, that "the potential for uncovering exculpatory evidence makes it more than probable that a trier of fact would come to a different conclusion." *Castro*, at 1249. This variation on the fourth prong is not met by the *potential* uncovering of some *undescribed* evidence. Potential is not reality, much less evidence, and one cannot call a result probable if one does not know the evidence on which such a result would have to be based.

We also are constrained to note with disapproval taking judicial notice of and citing, *sua sponte*, the May 20, 2012 newspaper article, published more than three years after the present record was closed. The

■ We decline to impose a strict requirement that the proponent of a Rule 720 motion attach affidavits or other offers of proof; the rule does not contain express language requiring this, in contrast to the rules pertaining to PCRA petitions. However, we hold a motion must, at the very least, describe the evidence that will be presented at the hearing. Simply relying on conclusory accusations made by another, without more, is insufficient to warrant a hearing.[14] The article here mentioned individuals who may have been relevant witnesses in the end, as well as a video tape and an ongoing investigation regarding Officer Cujdik. The motion says nothing about which, if any, of this potential evidence appellee would rely on to support his request for a new trial. Absent identification of the actual testimony, physical evidence, documentation, or other type of evidence to support the allegations of Officer Cujdik's wrongdoing, we cannot conclude appellee had evidence to offer; to conclude otherwise would be speculation.

Indeed, the hearing is for the presentation of evidence, not the potential discovery of evidence. "An evidentiary hearing . . . is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim[.]" *Commonwealth v. Scott*, 561 Pa. 617, 752 A.2d 871, 877 n. 8

relevant issue involves the sufficiency of the 2009 motion; the contents of a 2012 article are no more pertinent than the fact the officer has to date never been charged with any crimes at all.

We must reject as well appellee's suggestion the trial court erred in finding the third prong of the test was not met; he does so because of the degree of impeachment he anticipates he would inflict. Even if his impeachment would "destroy and obliterate" a witness, it is still impeachment, and the rule does not quantify the degree of impeachment beyond which the rule no longer applies.

**14.** At argument, appellee's counsel stated he had spoken with the reporters who authored the article and the FBI agents involved in the investigation, and he would offer them as witnesses; however, appellee's motion did not mention these witnesses. Appellee was represented by different counsel on appeal due to the death of post-verdict counsel, and appellate counsel stated he would not call post-verdict counsel's investigation into question, an understandable decision worthy of respect. This may explain matters, but it does not relieve appellee of his burden of averring to the existence of actual evidence in his motion.

(2000) (citation omitted). While Rule 720's comment explains the rule requires a motion for after-discovered evidence be filed promptly upon the discovery of such evidence, there must be actual discovery of actual evidence, not merely the possibility of such evidence. The relevant motion is not to serve as a preemptive means of securing a hearing that will itself comprise the investigation. Appellee needed to do more than present an article "pointing to" allegations that if true have the potential to aid his cause; he needed to clearly articulate in his motion what evidence he would present to meet the test. As he failed to do this, the trial court properly denied his motion. Accordingly, we reverse the order of the Superior Court and remand for reinstatement of appellee's judgment of sentence.[15]

Order reversed; jurisdiction relinquished.

Justice STEVENS did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justice SAYLOR, BAER and McCAFFERY join the opinion.

Justice TODD files a concurring opinion.

Justice TODD, concurring.

I join the Majority Opinion, subject to the following clarifications.

Initially, I note that there are two distinct aspects to this appeal. There is the standard for the award of a new trial based upon after-discovered evidence, and there is the separate issue of the standard to be employed to determine whether a hearing should be held on the issue of whether a new trial is warranted. As noted in footnote 7 of the Majority Opinion, to be awarded a new trial, the movant must produce *evidence* that: (1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corrobo-

---

15. Appellee acknowledged at argument of this case that he has completed serving his sentence and is not subject to probation; however, he nonetheless continued to seek a new trial as the first step in the process of having his record expunged.

rative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict. Majority Opinion, at 588 n. 7, 93 A.3d at 821 n. 7 (citing *Commonwealth v. Pagan*, 597 Pa. 69, 950 A.2d 270, 292 (2008)). However, I would provide further guidance on the standard by which trial judges should consider granting a hearing on the question of whether a new trial is warranted based upon after-discovered evidence.

Unfortunately, Pa.R.Crim.P. 720, which governs post-sentence procedures, including after-discovered evidence, is unhelpful as to what is required for a judge to hold a hearing on the issue of whether a new trial should be awarded.[1] In my view, a "less-than-actual-evidence" standard for granting a hearing on a motion for a new trial based on after-discovered evidence, seemingly suggested by the majority,[2] is sufficient and consistent with Pa.R.Crim.P. 720. Such a standard would require that the motion for a new trial based upon after-discovered evidence contain, at a minimum: (1) a summary of the relevant facts that the movant will prove at a hearing; and (2) a description of the evidence, then available, that the movant will present at a hearing to establish the relevant facts. The trial court would either grant or deny the request

[1]. Pa.R.Crim.P. 720(C) provides: "A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." The official comment to Rule 720 states, in relevant part, "paragraph (C) requires that any claim of after-discovered evidence must be raised promptly after its discovery. Accordingly, after-discovered evidence discovered during the post-sentence stage must be raised promptly with the trial judge at the post-sentence stage; after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge; and after-discovered evidence discovered after completion of the direct appeal process should be raised in the context of the PCRA."

[2]. While the majority persuasively explains that something more than the proffer of an article is required, it suggests both a somewhat relaxed informational requirement, Majority Opinion at 598, 93 A.3d at 827 ("at the very least, describe the evidence that will be presented at the hearing"), and a seemingly more demanding standard. *Id.* at 598, 93 A.3d at 827 ("[a]bsent identification of the actual testimony, physical evidence, documentation, or other type of evidence ... we cannot

for a hearing based upon this proffer, subject to an abuse of discretion standard.

Here, as noted by the majority, statements or affidavits from reporters or FBI agents could have been obtained, or, at a minimum, a summary of these individuals' purported testimony should have been provided in support of Appellee's motion. In light of Appellee's failure to provide such threshold information, the trial court properly denied his motion.