J-S18007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JARVIS PAYTON, | |
| Appellant | No. 2583 EDA 2013 |

Appeal from the Judgment of Sentence Entered August 9, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013450-2012

BEFORE:  BENDER, P.J.E., ALLEN, J., and MUNDY, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED JUNE 17, 2015**

Appellant, Jarvis Payton, appeals from the judgment of sentence of eight and a half (8½) to seventeen (17) years' incarceration, followed by five (5) years' probation, imposed after he was convicted of persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets or public property in Philadelphia.  Appellant challenges the sufficiency of the evidence to sustain his convictions and requests that this matter be remanded to the trial court for further proceedings based on after-discovered evidence.  We conclude that the sufficiency claim is without merit, but we remand for further proceedings.

The trial court has set forth the facts which led to Appellant's convictions as follows:

On October 23, 2012, at approximately 8:45 p.m., Philadelphia Police Officer David O'Connor was on routine patrol with his partner on the 300 block of East Upsal Street when he observed a blue Ford Aerostar minivan that was being operated with a non-working brake light. After following the vehicle for one block, the officers stopped the vehicle for investigation. As Officer O'Connor exited the patrol car and approached the vehicle, he had a clear view inside the vehicle through the rear window. The area where the vehicle was stopped was well lit. Officer O'Connor observed three males inside. One male was located in the driver's seat, one male was seated in the front passenger seat, and [Appellant] was seated in the middle row of the vehicle, in the seat directly behind the driver.

As Officer O'Connor approached the vehicle, he observed [Appellant] making numerous movements. Specifically, Officer O'Connor observed [Appellant] reaching down and to his right with the upper half of his body shifting toward the passenger side. As [Appellant] was making these movements, he was looking back at Officer O'Connor. The two other occupants did not make any movements as Officer O'Connor approached the vehicle.

Officer O'Connor initially attempted to have the passengers exit the vehicle through the side door in the middle of the vehicle. No one could open the middle side door, so all of the front passengers exited first and were taken to the patrol car while [Appellant] remained alone in the rear of the vehicle for a short period of time before exiting. Officer O'Connor returned to search the car and immediately found a silver handgun, loaded with eight live rounds. The gun was located within the immediate reach of where [Appellant] was seated, *i.e.*, on the floor next to the middle row passenger side seat where [Appellant] was seated. This is the same area in which Officer O'Connor previously saw [Appellant] reaching toward. Upon recovery of the gun, [Appellant] provided Officer O'Connor with a false name.

At trial, [Appellant] testified that he was aware that a gun was recovered next to his seat in the same place where Officer O'Connor observed him reaching, but denied that he saw the gun. [Appellant] stipulated that he ha[d] a prior conviction in 2005 for a *crimen falsi* [offense].

Trial Court Opinion (TCO), 5/16/14, at 1-2 (citations to the record omitted).

Based on this evidence presented at a non-jury trial on June 7, 2013, Appellant was found guilty of one count each of persons not to possess firearms,[1] firearms not to be carried without a license,[2] and carrying firearms on public streets or public property in Philadelphia.[3] On August 9, 2013, he was sentenced by the court to eight and a half (8½) to seventeen (17) years' incarceration, followed by five (5) years' probation. Appellant filed a timely notice of appeal, as well as a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), wherein Appellant preserved his sufficiency claim. In response, the trial court filed a Rule 1925(a) opinion addressing the sufficiency of the evidence. Subsequently, Appellant waived his right to counsel, proceeded *pro se* on appeal,[4] and filed a motion to submit after-discovered evidence. Said motion was denied without prejudice by the trial court. Therefore, Appellant additionally presents the issue of after-discovered evidence on appeal.

_____

[1] Pursuant to 18 Pa.C.S. § 6105(a)(1).

[2] Pursuant to 18 Pa.C.S. § 6106(a)(1).

[3] Pursuant to 18 Pa.C.S. § 6108.

[4] On May 29, 2014, Appellant filed a motion to proceed on appeal *pro se*. A **Grazier** hearing was held on October 9, 2014, whereby Appellant waived his right to counsel and was granted leave to proceed *pro se*. Appellant's Brief, at 6. **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

First, we address the merits of the sufficiency claim. Specifically, Appellant presents the following issue for our review: "Did the trial court err when it found the evidence sufficiently proved beyond a reasonable doubt that … Appellant was in constructive possession of a firearm found on the passenger side floor of a minivan in which he was a passenger with two other occupants?" Appellant's Brief, at 4.

To begin, we note our standard of review for a challenge to the sufficiency of the evidence:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa.Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Each of the counts of which Appellant was convicted requires proof of possession of a firearm. Where there is a lack of evidence of literal, physical possession, "the Commonwealth may sustain its burden by showing constructive possession." *Commonwealth v. Harris*, 397 A.2d 424, 429 (Pa. Super. 1979).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not.

- 4 -

We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (quoting *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012)).

Appellant avers that the Commonwealth failed to prove he constructively possessed the firearm found on the floor of the vehicle at the time of his arrest. Appellant alleges that the officers merely saw him moving towards the right side of the vehicle but never actually saw him hold or drop the firearm, Appellant's Brief, at 15, and states "it is not logical to conclude that [he] would have been able to see where the firearm was hidden on the floor," *id.* at 12, as Officer O'Connor needed "to use his flashlight to illuminate the spot where the gun was found[,]" *id.* He further argues that the other two occupants of the vehicle had equal access and "could … just as easily have placed th[e] firearm on the floor." *Id.* at 10. We disagree.

In support of his argument, Appellant relies heavily on *Commonwealth v. Boatwright*, 453 A.2d 1058 (Pa. Super. 1982), where the defendant was seated in the front passenger seat of a parked vehicle, accompanied by the driver and another passenger seated in the rear, directly behind the driver. As the officer in *Boatwright* approached the vehicle, he observed the defendant's body moving towards his left rear. When the officer shined a light into the vehicle, he discovered a gun on the left rear floor. The *Boatwright* court found the evidence insufficient to

prove constructive possession of the firearm where the *only* evidence was the officer's testimony that he saw the defendant move towards the left rear of the vehicle *where another passenger was also seated*. **Id.** at 1059.

A review of the evidence in the instant case discloses that Appellant's reliance on the decision in **Boatwright** is misplaced. Unlike in **Boatwright**, there were no other occupants seated in the middle row where the firearm was found. TCO, at 2. Furthermore, Officer O'Connor testified that Appellant was the *only* occupant to make furtive movements as he approached the car and the firearm was found in the same area towards which Appellant had been observed bending and leaning. **Id.** at 1-2. Additionally, Appellant was left alone in the vehicle for a short period of time prior to the discovery of the firearm. **Id.** at 2. Although Officer O'Connor used a flashlight to conduct his search of the vehicle, the firearm was not hidden and was within Appellant's view. **Id.** at 4. Finally, we concur with the Commonwealth that Appellant exhibited a consciousness of guilt when he provided Officer O'Connor with a false name. Viewed in the light most favorable to the Commonwealth as the verdict winner, we conclude that there was sufficient evidence to support the trial court's finding of constructive possession and, therefore, Appellant's sufficiency claim lacks merit.

Next, we address the question of whether this matter should be remanded to the trial court, "for further proceedings based on after-discovered evidence regarding the illegal searches and police misconduct by

Officer David O'Connor, the prosecution[']s only testifying witness?" Appellant's Supplemental Brief, at 2.

On October 20, 2014, directly following a grant of leave to proceed *pro se,* Appellant filed a motion to submit after-discovered evidence pursuant to Pa.R.Crim.P. 720(C).[5] Having determined that Appellant has followed the proper procedure to request a new trial, we now turn to the merits of his request for relief.

It has been well-established that in order to be granted a new trial on the basis of after-discovered evidence:

> [A]ppellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Perrin*, 108 A.3d 50 (Pa. Super. 2015) (quoting *Commonwealth v. Montalvo*, 986 A.2d 84, 109 (Pa. 2009)). Additionally, "the proposed new evidence must be 'producible and admissible.'" *Commonwealth v. Castro*, 93 A.3d 818 (Pa. 2014) (quoting *Commonwealth v. Chamberlain*, 30 A.3d 381, 414 (Pa. 2011)).

---

[5] "[A]fter-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge ...." Pa.R.C.P. 720, Comment.

Appellant presents an article published by the Philadelphia Daily News on June 12, 2014,[6] which alleges that retired police officer, Herbert Spellman, filed a civil rights lawsuit against Officer O'Connor and Officer Momme, the same officers involved in Appellant's arrest,[7] for the unlawful stop and frisk of his person based on his race. Although the lawsuit brought by Spellman was still pending, and thus provides mere speculations, the article also references another federal lawsuit filed by Aaron Bell, in which Officer O'Connor was named a defendant.[8] In **Bell v. City of Philadelphia**, the plaintiff alleged he was unlawfully stopped and searched by Officer O'Connor and his former partner, Officer Goshert. The facts in **Bell** are similar to the case before us, as **Bell** involved a traffic stop during which a firearm was recovered from the plaintiff's vehicle by Officer O'Connor. The newspaper article reports that a jury verdict was entered in **Bell**, on May 29, 2014, awarding the plaintiff compensatory damages and punitive damages

_____

[6] Julie Shaw, *Suit:  Blue-on-blue stop was also white-on-black*, Philadelphia Daily News, June 12, 2014.

[7] Appellant's convictions stemmed from a vehicle stop involving Officers David O'Connor and Brad Momme. Officer Momme did not testify at trial. Officer O'Connor was the prosecution's sole testifying witness. Appellant's Supplemental Brief, at 4.

[8] **See** Appellant's Supplemental Brief, Exhibit "A." (where Appellant attaches a docket for the Eastern District of Pennsylvania, Civil Action Case #: 2:12-cv-02625-GP, **Aaron L. Bell v. City of Philadelphia, Police Officer David O'Connor, and Police Officer Colin Goshert**).

against each officer. In support of the allegations made in the article, Appellant provides a copy of the court docket for the ***Bell*** case, Appellant's Supplemental Brief, Exhibit "A," evidencing the fact that Officer O'Connor is a named defendant in said case, as well as a memorandum opinion written by the court in response to post-verdict motions.[9]  In its opinion, the court overturned the count of municipal liability, but upheld Officer O'Connor's illegal search and false arrest verdicts and left the jury award undisturbed. Appellant's Reply Brief, Exhibit "A," at 19-20.   Additionally, Appellant produces an affidavit by Aaron Bell in which Bell attests to material facts of his case and alleges that Officers O'Connor and Goshert fabricated a basis for the unlawful stop in their police reports, searched Bell's person and vehicle without consent, and gave false testimony at trial.  Appellant's Reply Brief, Exhibit "B," at 1-3.

The Commonwealth argues that Appellant is not entitled to an evidentiary hearing because he has failed to produce any admissible

_____

[9] "In this suit under 42 U.S.C. § 1983, Aaron L. Bell alleged that the City of Philadelphia (the "City") and Police Officers David O'Connor and Colin Goshert (the "Officers") violated his Fourth Amendment rights through an illegal stop (Count I), a false arrest (Count II), an illegal search (Count III), malicious prosecution (Count IV), and the City's adoption of a policy or custom of permitting Fourth Amendment violations (Count V). … [T]he case proceeded to trial.  Mr. Bell, a layperson, represented himself.  At trial, the jury found for Mr. Bell on Counts II, III, and V, and awarded Mr. Bell $100,000.00 in compensatory damages from all the Defendants (i.e., jointly and severally) and $1,000.00 in punitive damages from the Officers.  The jury rendered defense verdicts on Counts I and IV."  Appellant's Reply Brief, Exhibit "A," at 1.

evidence, asserting that "[n]ewspaper articles are generally inadmissible to prove the facts contained therein." Commonwealth's Brief, at 8-9. Generally, newspaper articles do not constitute evidence as they contain inadmissible hearsay. In **Commonwealth v. Castro**, 93 A.3d 818 (Pa. 2014),[10] our Supreme Court addressed the issue of whether it is possible to meet the test for after-discovered evidence where the defendant only relies on a newspaper article. The Court concluded "[w]hile newspaper articles can alert a party to the possible existence of evidence, the party must do more than attach the article as establishing the evidence that will meet the four-pronged test." **Id.** at 827. While it declined to impose a strict requirement of attaching affidavits or other offers of proof, the Court went on to hold that a motion seeking an evidentiary hearing based on after-discovered evidence "must, at the very least, describe the evidence that will be presented at the hearing. Simply relying on conclusory accusations made by another, without more, is insufficient to warrant a hearing." **Id.**

Here, Appellant does not merely rely on the newspaper article as his basis to request a new trial. The article initially alerted Appellant to the existence of the **Bell** case and the possibility of additional evidence. While the Court in **Castro** declined to strictly require affidavits or other offers of

---

[10] **See Castro**, 93 A.3d at 829 n.11 (citing **Commonwealth v. Saksek**, 522 A.2d 70 (Pa. Super. 1987)) (upholding exclusion of newspaper article as inadmissible hearsay).

proof in support of a motion for a new trial based on after-discovered evidence, Appellant has, in fact, provided an affidavit of a witness he intends to use if granted a new trial, as well as a court docket and the opinion from the trial court as other offers of proof. Furthermore, Appellant describes in detail the evidence he intends to present at an evidentiary hearing. Appellant's Supplemental Brief, at 8; Appellant's Reply Brief, at 7-10. Finally, we note that the newspaper article produced by Appellant refers to a jury verdict, not a mere investigation, arrest, or pending lawsuit.[11] We conclude that Appellant has proffered sufficient evidence to satisfy the requirements set forth in *Castro*.

At an evidentiary hearing, Appellant will be required to show by a preponderance of the evidence that each prong of the after-discovered evidence test has been met in order for a new trial to be warranted. *Rivera*, 939 A.2d at 359. Reviewing the four prongs, it appears unlikely that Appellant would have discovered the evidence before the conclusion of his trial, as both the jury verdict in the *Bell* case and the publication of the newspaper article did not occur until more than a year after Appellant's

_____

[11] *See Commonwealth v. Estepp*, 17 A.3d 939 (Pa. Super. 2011) (where we found newspaper articles were not sufficient to meet the test for after-discovered evidence where the articles merely stated that the officer was under investigation for misconduct, distinguishing *Estepp* from our decision in *Commonwealth v. Rivera*, 939 A.2d 355 (Pa. Super. 2007), where the appellant cited newspaper articles referencing an actual arrest and the case was remanded for an evidentiary hearing based on after-discovered evidence).

conviction. Second, the evidence does not appear to be merely corroborative or cumulative, as Officer O'Connor's conduct was not questioned at trial, because Appellant had no basis to challenge the officer's credibility at the time.[12] Moreover, we note that while the evidence may, indeed, be used to impeach the credibility of Officer O'Connor, the evidence will not *solely* be used for this purpose. Appellant intends to use the evidence to file a motion to suppress the evidence recovered from the search. Appellant's Supplemental Brief, at 7. Finally, the evidence could likely result in a different outcome if a new trial were granted, because it calls into question the character of Officer O'Connor, who was the only witness to testify against Appellant at trial. The evidence may also be used to establish that Officer O'Connor engaged in a pattern of unlawful stops and falsifying reports. This could form the basis for a motion to suppress the firearm. Based on the information in the record, we conclude that Appellant ostensively could satifsfy the four-prong test. However, procedure demands that the trial court review the evidence and make this determination. *Rivera*, 939 A.2d at 359.

In *Commonwealth v. Perrin*, 108 A.3d 50 (Pa. Super 2015), the proof of after-discovered evidence at issue was a document generated by an

_____

[12] *See Rivera*, 939 A.2d at 359 (where we concluded after-discovered evidence was neither corroborative nor cumulative since at no time was the veracity of the witness' testimony questioned at trial).

FBI agent detailing a conversation in which the key witness at Appellant's trial admitted that he perjured himself and that Appellant did not participate in the crime. After concluding that the "evidence [was] even more pointed toward Appellant's innocence than the evidence at issue in **Rivera** and **Castro**," **id.** (emphasis omitted), we remanded the case to the trial court for an evidentiary hearing. Similar to **Perrin**, we find it appropriate here, where the Appellant has proffered more evidence than in **Castro** and has sufficiently described the evidence he will offer at an evidentiary hearing, to remand the case to allow Appellant to flesh-out his claim for a new trial before the trial court.

Judgment of sentence **vacated**. Case **remanded** for an evidentiary hearing consistent with this memorandum in order to determine if a new trial is required based upon after-discovered evidence, and, if not, for the re-imposition of sentence. Jurisdiction **relinquished**.

Judge Mundy joins this memorandum.

Judge Allen files a concurring and dissenting memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/17/2015

- 13 -