J-S39007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THOMAS GEHAN, | |
| Appellant | No. 401 EDA 2014 |

Appeal from the Judgment of Sentence August 26, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-CR-0011617-2012
CP-51-CR-0005013-2012

BEFORE: BOWES, OTT AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.: **FILED JULY 07, 2015**

Thomas Gehan appeals from the judgment of sentence of three to six months imprisonment followed by two years probation imposed after Appellant was convicted of two counts of terroristic threats and one count of simple assault. We affirm the convictions, but vacate the sentence and remand for an evidentiary hearing.

Based upon events that occurred on March 7, 2012, Appellant was charged at criminal action number 11617 of 2012 with terroristic threats, contempt for violating an order, and harassment. Due to an incident occurring on March 14, 2012, he was charged at criminal action number 5013 of 2012 with aggravated assault, contempt for violating an order,

possession of instrument of crime, terroristic threats, reckless endangerment, and two counts of simple assault. The matters were consolidated and proceeded to a nonjury trial, where the victim Yolanda Zandona testified as follows.

In March 2012, she and Appellant had mutual protection from abuse ("PFA") orders against each other. They had dated from November 2010 to October 2011. On March 7, 2012, Ms. Zandona, who was approximately seven months pregnant with Appellant's son, was residing with her former boyfriend, Steven Carroll, and Steven's mother Ana on East Hazard Street in Philadelphia. That day, Ana received a telephone call and started to scream. Ms. Zandona ran to Ana, who appeared frightened and upset and said that Appellant had threatened her life.

The telephone rang again, and Ms. Zandona answered it. Appellant was on the line, and he "started threatening. And said that he has a new baby on the way. And that he was going to hurt me and Ana Carroll." N.T. Trial (Waiver), 3/25/13, at 17. Ms. Zandona continued that Appellant "said he was going to hurt me in any type of way. Shoot me." *Id*. at 18. Ms. Zandona was aware that Appellant had a "drawer full of knives," including switchblades, since she viewed those items when she lived with Appellant. The victim immediately telephoned police and reported the crime. There was a stipulation that a police witness would have verified that on March 7, 2012, Ana Carroll and Ms. Zandona filed a police report against Appellant.

At approximately 6:30 p.m. on March 14, 2012, Ms. Zandona was watching television at the East Hazard Street residence when she heard Ana screaming just outside the front door. Ms. Zandona went to the door and saw Appellant "out there yelling at [Ana], calling her a bitch." *Id*. at 25. Appellant had a knife in his hand. *Id*. at 27. Appellant started swinging the knife back and forth toward Ana while he was standing about two feet from her, and he was saying that "he was going to f__ing kill her[.]" *Id*. at 28-29.

Ms. Zandona confronted Appellant and asked what he was doing since he had a PFA preventing him from being in proximity to her. Appellant swung the blade at Ms. Zandona. Ms. Zandona felt that her unborn baby was in danger because Appellant had "said that there is [a] new one on the way by his ex-girlfriend Gina. And he does not want mine anymore." *Id*. at 30-31. Ana's two sons chased Appellant away with a bat.

Appellant did not testify in his defense, but argued that Ms. Zandona was not credible. The trial court determined otherwise and convicted Appellant of two counts of terroristic threats and one count of simple assault. It acquitted Appellant of the remaining charges. The court ordered a pre-sentence report, and, on August 26, 2013, the matter proceeded to sentencing. Appellant orally raised a weight-of-the evidence claim at that time. He pointed out that the victim had a conviction involving *crimen falsi,* conspiracy to commit robbery, and Appellant maintained that there were

inconsistencies in her testimony. Appellant continued that Ms. Zandona had a "clear motive to fabricate, based on the relationship she had had with my client, his new relationship[.]" N.T., 8/26/13, at 9. Appellant also pointed to the lack of corroborative evidence, such as telephone records and other witnesses to the two events.

The court rejected his motion and sentenced Appellant to three to six months imprisonment on one count of terroristic threats, a consecutive period of probation of two years for simple assault, and no further penalty for the other count of terroristic threats. Based upon these convictions, Appellant's parole and probation in a separate case were revoked, and he began serving a state sentence in that matter.

On May 19, 2014, after this appeal was filed from the judgment of sentence, Appellant filed with this Court an application to remand this matter for an evidentiary hearing based upon the existence of after-discovered evidence. Appellant averred that counsel had subpoenaed transcripts of telephone calls that Appellant made from prison because Appellant, between February 7, 2014, to March 7, 2014, telephoned Ms. Zandona approximately twelve times and Ms. Zandona admitted that she fabricated her trial testimony.[1]

_____

[1] Appellant submitted a compact disc with the telephone conversations.

- 4 -

Specifically, Appellant averred the following. During a 2:20 p.m. call on February 7, 2014, Appellant told Ms. Zandona that he was serving a lengthy prison term since the convictions herein resulted in revocation of both his parole and probation in the other criminal action. Ms. Zandona responded, "[M]y bad. I didn't know, like I really didn't. I was angry. I was angry at you for abandoning me." Petition To Remand Record To Trial Court For The Filing Of A Post-Sentence Motion For A New Trial On The Ground Of After-Discovered Evidence And To Vacate Briefing Schedule at ¶ 11.

During a February 20, 2014 call, Appellant accused Ms. Zandona of fabricating her testimony based upon the demands of an unidentified man that Appellant referred to as "dude." *Id*. Ms. Zandona then responded, "I was pregnant, first of all and you f__ing left me. So I was hurt, hurt people hurt people. Come on now you were with that big-ass f__ing big-forehead f__ing Gina." *Id*. During that same call, Appellant again stated that Ms. Zandona had lied "about me on the stand, because dude told you to Yolanda, you don't think that is f__ed up, like come on." *Id.* Ms. Zandona answered, "[I]t is f__ed up, it is." *Id*. Ms. Zandona then said, "[O].k., I will tell the DA and tell them that the dude had a f__ing gun up to my head and threatened to kill me and f__ing made me f__ing tell on you and lie about you[.]" *Id*.

Based upon these telephone calls, Appellant petitioned this Court for a remand for the conduct of an evidentiary hearing to determine if Appellant

J-S39007-15

was entitled to a new trial. This Court denied that petition without prejudice to Appellant's right to re-assert his position before this panel. Appellant filed his brief, raising a weight claim and again seeking remand for an evidentiary hearing based upon after-discovered evidence:

> 1. Did not the trial court err by denying appellant's motion for a new trial, as the verdict was against the weight of the evidence where the Commonwealth presented the testimony of only one incredible and uncorroborated witness at appellant's trial and a new trial is necessary in the interests of justice?
>
> 2. Should not this matter be remanded to the trial court for a hearing on after-discovered evidence because while this case was pending on appeal telephone conversations between appellant and the complainant in this matter, the Commonwealth's only trial witness, took place in which the complainant admitted to fabricating her trial testimony and these telephone conversations were lawfully recorded?

Appellant's brief at 3.

Since the trial judge rejected Appellant's weight claim, the merits of that contention is subject to the following standard of review:

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact-finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

- 6 -

*Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citation omitted). Indeed, "One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice." *Id*.

Appellant first posits that Ms. Zandona's testimony was incredible on its face. Appellant's brief at 17-21. This position fails since it is beyond cavil in this Commonwealth that it is solely within the province of the factfinder to determine a witness's credibility. *Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa.Super. 2013) ("A determination of credibility lies solely within the province of the factfinder.") *Commonwealth v. Blackham*, 909 A.2d 315, 320 (Pa.Super. 2006) ("The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses. . . . **It is not for this Court to overturn the credibility determinations of the fact-finder**.") (emphasis added). Since we are not permitted to rule that Ms. Zandona's testimony was unworthy of belief, we reject this assertion.

Appellant next suggests that Ms. Zandona should not have been believed due to her motive to fabricate the charges and due to inconsistencies between her trial testimony and her statements to police as well as her preliminary hearing testimony. Appellant's brief at 21-22. This averment likewise must fail in that inconsistencies in a witness's testimony

and a witness's bias both relate to that person's credibility. ***Commonwealth v. DeJesus***, 860 A.2d 102, 107 (Pa. 2004) ("Questions concerning inconsistent testimony and improper motive go to the credibility of the witnesses. **This Court cannot substitute its judgment for that of the jury on issues of credibility**.") (emphasis added; citations omitted). The trial court heard about the inconsistencies and Appellant argued that the witness was biased. The trial court, sitting as factfinder, had to determine whether she was credible despite these facts. We cannot substitute our judgment in this respect for that of the trial court.

Appellant also suggests that his convictions cannot stand due to the lack of corroborating evidence. Appellant's brief at 22-23. It is well-established that the uncorroborated testimony of a single person is sufficient to support a conviction. ***E.g. Commonwealth v. Trippett***, 932 A.2d 188 (Pa.Super. 2007) (uncorroborated testimony of a victim, if believed by factfinder, can sustain a conviction); ***Commonwealth v. Lamb***, 455 A.2d 678, 686 (Pa.Super. 1983) ("It is clear that the uncorroborated testimony of a co-conspirator, if believed, is sufficient to support a conviction in a criminal conspiracy prosecution."); ***Commonwealth v. Budd***, 140 A.2d 346 (Pa.Super 1958) (uncorroborated testimony of drug-addict witness was sufficient to sustain conviction).

Thus, the fact that there was no corroborating evidence does not render Appellant's convictions infirm or allow this Court to overturn the trial

court's credibility determination. We have reviewed Ms. Zandona's testimony, which we must credit under applicable precedent. If credited, we perceive of no abuse of discretion in the trial court's conclusion that the verdict did not shock its sense of justice. Hence, we reject Appellant's first allegation.

Appellant also seeks a remand for a new trial based upon the telephone conversations that he had with Ms. Zandona after this appeal was filed. We note that, "A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). Additionally, "after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge[.]" Pa.R.Crim.P. 720, Comment. Hence, Appellant's request is properly before this court. ***Commonwealth v. Perrin***, 108 A.3d 50 (Pa.Super. 2015).

As our Supreme Court has observed: "The four-prong test for awarding a new trial because of after-discovered evidence is well settled. The evidence: (1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict." ***Commonwealth v. Castro***, 93 A.3d 818, 821 (Pa. 2014).

- 9 -

Appellant proffers that, at an evidentiary hearing, he will ask the trial court to both review "the telephone calls and entertain testimony from Ms. Zandona herself." Appellant's brief at 29. The Commonwealth has indicated that it "does not oppose a remand to allow defendant to present the testimony of Ms. Zandona at an evidentiary hearing." Commonwealth's brief at 13. The Commonwealth concurs that such a hearing is appropriate under this Court's decision in **Perrin**.

**Perrin** was a remand from our Supreme Court for reconsideration in light of **Castro**, **supra**, of this Court's grant of an evidentiary hearing based upon after-discovered evidence. In **Castro**, the Court opined that the contents of a newspaper article were not evidence upon which an evidentiary hearing could be awarded in this context. In **Perrin**, we again remanded for a hearing. Therein, the defendant's convictions were premised primarily upon the testimony of a single witness, who acknowledged at trial that his testimony was obtained by the Commonwealth in exchange for leniency in a pending federal matter. After the defendant's trial and sentencing, that witness told a cellmate that he had fabricated his testimony against the defendant and that the defendant was not involved in the crime in question. The cellmate informed the Federal Bureau of Investigation, which prepared an affidavit outlining the cellmate's report and forwarded the affidavit to the Commonwealth. The district attorney, in turn, gave the affidavit to the defendant.

- 10 -

We observed that the first prong of the after-discovered evidence test was satisfied since the cellmate did not tell the FBI about the witness's admissions until after the defendant was sentenced. We further observed that the second element of the test was met as there was no proof offered at trial indicating that defendant had not participated in the crime.

We also ruled that evidence that a witness had fabricated his testimony, in its entirety, could not, as a matter of law, be characterized as merely impeachment evidence and that an evidentiary hearing was required so that that determination could be made by the trial court. We opined that the affidavit did much more than suggest that the witness could have been cross-examined. Instead, the affidavit indicated that the witness committed perjury and that the defendant was innocent of the crime. We noted that the document in question was an affidavit, which does constitute evidence, in contrast to the contents of a newspaper article, which was rejected as evidence in **Castro**. We concluded that evidence that the key witness at trial lied about the defendant's participation in it might have changed the outcome at trial. Hence, we ruled that an evidentiary hearing was warranted.

Herein, Appellant's proof arose after sentencing and is after-discovered evidence. It was not corroborative or cumulative to other evidence produced at trial. It did not merely involve impeachment since Ms. Zandona stated in the telephone calls that she fabricated her testimony against

- 11 -

Appellant in revenge for his abandonment of her and due to the coercion of an unnamed male. If Ms. Zandona did lie, such an admission would likely have changed the outcome at trial. Since Appellant has satisfied the requirements for an evidentiary hearing on his claim, as outlined by **Perrin**, we will grant relief.

The trial court must conduct an evidentiary hearing and receive testimony from Ms. Zandona and listen to the telephone conversations in order to determine if Appellant is entitled to a new trial. If the trial court concludes that a new trial is not warranted, the sentence can be reinstated.

Petition for remand granted. Judgment of sentence vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2015

- 12 -