J-A19035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN R. MILLER | : | |
| | : | |
| Appellant | : | No. 1652 EDA 2018 |

Appeal from the Order Dated May 30, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0011715-2014

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:          **FILED NOVEMBER 20, 2019**

Appellant, Steven R. Miller, appeals from the order entered by the Court of Common Pleas of Philadelphia County denying his request for a new trial based on after-discovered evidence.  After careful review, we affirm.

This Court has previously set forth the facts and procedural history of the case, as follows:

> On October 6, 2013, Appellant, an inmate at Curran-Fromhold Correctional Facility in Philadelphia, was using a phone in the prison's telephone bank.  Khayree Murray, a fellow inmate, approached Appellant and asked to use one of the phones. Correctional Officers Denise Irving and Eddie Rosa and Correctional Sergeant Joyce Cooper observed Appellant attack Murray.  Appellant stabbed Murray several times with "a sharp long screw rigged with sharp ridges and a rubber band wrapped in a ripped T-shirt" in the head, back, and ear.  Officer Rosa immediately intervened, separated the two men with the help of Officer Irving, and used pepper spray to subdue Appellant. Officers recovered the makeshift weapon from the ground after Appellant dropped it.  Officer Rosa testified that Murray was in shock and that he did not observe Murray strike Appellant.

---

*   Former Justice specially assigned to the Superior Court.

Murray attempted to downplay his injuries, and told officers that he fell down some stairs. Murray sustained life-threatening injuries, which included three stab wounds to the back, two puncture wounds to the base of the neck, wounds to his back, back of the head, and left hand, and lacerations to his ear and cheek. Murray's injuries required eight sutures. Sergeant Cooper decided to transport Murray to the hospital for treatment. Appellant had no injuries, but he was treated for pepper spray in his eyes and placed in solitary confinement.

While walking with Officer Rosa through the prison shortly after the stabbing, Appellant stated, "If you didn't pepper spray, you would have been the next victim."[fn] Trial Court Opinion at 5. In recorded prison phone calls, Appellant subsequently made several inculpatory statements, boasted of his violent reputation in the prison as a result of the attack, and repeated a rumor that there was a bounty on Murray's head because he was such a snitch.

---

Fn. Officer Rosa omitted this statement from the official written report of the incident.

---

Appellant proceeded to a jury trial. Murray refused to testify at trial and the trial court held him in contempt. Appellant testified and claimed that he acted in self-defense. Although Appellant claimed that Murray attacked him first with the weapon, Appellant admitted that he never feared that Murray would kill him.

On June 25, 2015, the jury convicted Appellant of Aggravated Assault, Simple Assault, and PIC. On that same day, the trial court imposed an aggregate term of 8 to 20 years' incarceration. Appellant filed a Post-Sentence Motion, which the trial court denied on October 2, 2015.

Appellant filed a timely Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

***Commonwealth v. Miller***, 172 A.3d 632, 638 (Pa.Super. 2017).

On direct appeal, Appellant, through present counsel, raised eight questions for this Court's consideration. We deemed the first seven issues

meritless and affirmed judgment of sentence on that basis, but we determined remand was necessary to allow the trial court to consider the final issue, in which Appellant raised an after-discovered evidence claim. *Id.*, at 650-51. Specifically, Appellant asserted that two inmates had written letters to his attorney after his trial detailing their eyewitness observations of the prison attack in question and identifying Appellant as the true non-aggressor and victim who acted only in self-defense. In deciding that remand was appropriate, we explained:

> "A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). The Comment to Rule 720 explains that "after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge[.]" Pa.R.Crim.P. 720, Comment.

> "To warrant relief, after-discovered evidence must meet a four-prong test: (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely." ***Commonwealth v. Rivera***, 939 A.2d 355, 359 (Pa.Super. 2007) (citation omitted).

> Appellant avers that while his claim was pending on appeal in this Court, Larry Williams sent Appellant's attorney a letter on August 12, 2016, over a year after Appellant was sentenced, claiming that the victim "told him a few hours before the incident that he was going to stab [Appellant] because he didn't like what he did at the phones. [Williams] then observed the incident and saw [the victim] was the aggressor and [Appellant] was defending himself." Appellant's Brief at 70.

> Appellant also avers that Tony Mason also sent Appellant's attorney a letter on August 20, 2016, indicating that he observed

- 3 -

the assault, saw the victim attack Appellant, and would have provided favorable testimony to Appellant at trial. *Id*. Appellant filed an Application for Remand on September 13, 2016, which this Court denied without prejudice to Appellant's raising the issue in his brief to this Court on appeal. Appellant has now done so and has reiterated his request for an evidentiary hearing. In its Brief, the Commonwealth does not oppose remand "for the sole and limited purpose of affording defendant the opportunity" to present his after-discovered evidence claim to the trial court. Commonwealth's Brief at 42. We agree.

Based upon the information in the briefs and the certified record, we are constrained to remand to provide the trial court the opportunity to develop the record and to rule upon Appellant's after-discovered evidence claim in the first instance. *See Rivera*, *supra*, at 358–59.

*Miller*, 172 A.3d at 650–51.

On May 23, 2018, the trial court conducted an evidentiary hearing pursuant to this Court's Opinion and order of remand. By its Order of May 30, 2018, the court denied Appellant's Motion for New Trial Based Upon After-Discovered Evidence "due to lack of merit." Trial Court Order and Memorandum Opinion, 5/30/18, at 1. The court provided its reasoning, as follows:

Upon completion of the evidentiary hearing held on May 23, 2018, [the trial court] determined that the testimony offered by the defense witnesses Larry Williams and Arjuna (also known as Tony Mason), upon whom the Defendant's Motion For New Trial was based, was so contradictory and incredible that this evidence could not, and would not, have been likely to rendered [sic] a different outcome at the original trial.

Moreover, each of the proffered witnesses had been available to the Defendant well before the conclusion of the original trial. The claimed "after-discovered evidence" did not meet at least two prongs of the well-established four prong test that would have warranted a new trial. [*Rivera*, *supra*].

- 4 -

[The trial court] has specifically determined that the sworn testimony of witness Larry Williams and Arjuna (also known as Tony Mason), materially contradicted not only each other's version of events at issue, but also the trial testimony of unbiased eyewitnesses and the Defendant's own version of the attack elicited during his sworn testimony before the jury.

It was easily apparent from the testimony presented at the evidentiary hearing that the claimed observations of these two "after discovered" witnesses Larry Williams and Arjuna Mason (also known as Tony Mason), of the aggravated assault of the victim Khayee Murray on October 6, 2013, had been materially false and concocted approximately three years after the subject attack while the Defendant and these two persons attended religious services while serving their respective custodial sentences at SCI Forrest. Each of these "witnesses" evidenced their bias and motivation to assist the Defendant because they viewed the sentence imposed upon the Defendant to be unfair. Each individual similarly evidenced that they had been connected to, or known to each other, or the Defendant, in some form or fashion, well before and well after the instant case was tried before the jury.

For the reasons stated upon the record and within this instant memorandum which may be supplemented upon transcription of the record, it is the determination of this court that to reward this Defendant with the requested remedy of a new trial based upon the submitted "after-discovered" evidence would be tantamount to endorsing deception upon the court to avoid justice.

Trial Court Opinion, 5/30/18, at 1-2.

Appellant has appealed timely from the trial court's order, and he raises

the following five issues:

1. Should a new trial be granted on the basis of after-discovered evidence on remand from the direct appeal of two critical prisoner/eyewitnesses who observed the events and would have confirmed the Appellant, Steven Miller's, version and the fact the alleged victim had planned to attack Mr. Miller and was the aggressor, and that Mr. Miller acted in self-defense?

2. Was Judge Coyle's conclusion that the witnesses were available before trial not supported by the record since neither witness came forward before trial to either trial counsel, Mr. Stretton, or to Mr. Miller, and they could not have been known to Mr. Stretton, or to Mr. Miller, and they could not have been known to Mr. Stretton or his investigator since they were incarcerated and Mr. Miller was placed in segregation after the incident?

3. Was Judge Coyle's finding that the witnesses were not credible not supported by the record, particularly since her conclusion that Mr. Miller and the two witnesses "concocted" this story at a prison religious service had no basis or support in the trial record?

4. Did Judge Coyle ignore the standard on remand for after discovered evidence was a preponderance of the evidence?

5. Did Mr. Miller meet the standard and was the evidence of such nature and character that a different result was likely?

Appellant's brief, at 6-7.

We review a trial court's decision to deny or grant a motion for new trial based on after-discovered evidence for an abuse of discretion or error of law that controlled the case. *Commonwealth v. Lyons*, 79 A.3d 1053, 1068 (Pa. 2013); *Commonwealth v. Bonaccurso*, 625 A.2d 1197, 1199 (Pa.Super. 1993). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Padillas*, 997 A.2d 356, 361 (Pa.Super. 2010) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)). "If a trial court erred in its

application of the law, an appellate court will correct the error." ***Id.*** (quoting ***Commonwealth v. Hernandez***, 886 A.2d 231, 235 (Pa.Super. 2005)).

A trial court may grant a post-sentence motion for a new trial based on after-discovered evidence if the appellant shows by a preponderance of the evidence that the after-discovered evidence (1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict. ***Commonwealth v. Griffin***, 137 A.3d 605, 608 (Pa.Super. 2016) (citing ***Commonwealth v. Castro***, 93 A.3d 818, 821 n.7 (Pa. 2014) (citation omitted)). The test is conjunctive; an appellant must show he has met each of these prongs to be entitled to a new trial. ***Id***.

Appellant has not met every prong. We need not reach the questions of whether Appellant has met each of the first three prongs, therefore, as we conclude his evidentiary proffer failed to meet the fourth and final prong.

The final prong tests whether the after-discovered evidence would have likely changed the result. In undertaking the fourth prong review, a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted. ***Padillas***, 997 A.2d at 365.[1]

---

[1] Appellant baldly claims the trial court ignored the fact that Appellant only had the burden of proving by a preponderance of the evidence (more likely

In making that determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction. [C]onflicting accounts are inherently unreliable and would not compel different verdict in new trial. [C]ases that have addressed newly-discovered evidence have focused not simply on the credibility of the person offering the exculpatory evidence, but on the credibility or trustworthiness of the evidence itself, as well as the motive, or other impeaching characteristics, of those offering it.

*Id*. (citations omitted).

Appellant claims the after-discovered eyewitness testimonies of Messers Williams and Mason were of such a nature and character as to enable him to make a fourth prong showing that it was more likely than not a different verdict would obtain at a new trial with the aid of such testimonies, which he calls "uncontroverted." We disagree, as we find it was within the sound discretion of the trial court to find the nature of the witnesses' testimonies to be unconvincing and of questionable plausibility within the context of the existing record.

Appellant dismisses the trial court's adverse credibility determinations about Mr. Williams and Mr. Mason as mere speculation unsupported by independent evidence. His dismissal, however, relies on nothing more than his own willingness to find that the witnesses were, instead, entirely credible.

_____

than not) that the testimony would achieve a better result. Nothing in the trial court's commentary during the evidentiary hearing or in its Memorandum decision and Order supports this claim. The court consistently identifies the governing four-prong test as the analytical touchstone in the present matter, and specifically refers several times to the preponderance of the evidence standard applying here.

For example, Appellant assails the trial court's finding that the two witnesses and he had the opportunity to formulate a plan to offer exculpatory testimony when they met at religious meetings offered for inmates. Appellant's argument in support of this challenge, however, simply asks us to accept both Mr. Williams' testimony that he did not remember speaking to the others, and Mr. Miller's testimony that they spoke only briefly because very little talking was permitted at the meetings.

Appellant also points to the fact that his attorney received letters from each of the two witnesses as additional proof that they acted independently in speaking out on the case. This position, too, embraces but one of two possibilities, and Appellant fails to demonstrate an abuse of discretion when the court reviewed the record as a whole and reasonably inferred the other possibility was at play, namely, that the letter writing campaign was likely part of a collaborative plan.

In his brief, Appellant contends that Williams' and Mason's observations of both the prelude to the assault and the assault itself were unique—and neither cumulative nor corroborative to other evidence—in that both men testified Murray, just moments before the altercation, announced his motive and intention to attack Appellant. Appellant's Brief at 65. Both Mr. Mason and Mr. Williams testified they saw Murray initiate the assault and continue to assault Appellant until the guards intervened. To the degree Appellant was apparently able to wrest the makeshift knife from Mr. Murray and stab him repeatedly, while incurring no real injury himself despite being the

unsuspecting victim in the witnesses' account, the witnesses stated Appellant acted only in self-defense. *Id*.[2]

For its part, the Commonwealth raises numerous concerns with the trustworthiness of such testimonies. It questions, for example, the credibility of Mr. Mason's assertion that he had no idea that Appellant would have been arrested for seriously injuring Mr. Murray with multiple stab wounds, whereas

---

[2] Appellant contrasts the witnesses' purportedly consistent testimonies with the inherently conflicted testimony of Officer Rosa, the only security guard who claimed at trial to witness the altercation from its inception and identified Appellant as the aggressor throughout. Appellant argues that Officer Rosa's testimony "was absolutely and totally inconsistent, contradictory, unreliable[,] and speculative." *See* Appellant's Brief, at 46-47.

The jury disagreed with Appellant's credibility assessment of Officer Rosa. Indeed, there was no dispute at trial that the officer stood as the only eyewitness to the altercation from its start, and the jury understood that his testimony was, therefore, most central to its task of determining whether Appellant acted criminally or in self-defense. Despite hearing extensive cross-examination on Officer Rosa's change in testimony with respect to which of the two combatants was on the phone when the fight began, the jury clearly credited his consistent testimony that he witnessed Appellant initiate violence with the makeshift knife.

The trial court's after-discovered evidence evaluation of the nature and quality of the new testimonies involved placing such testimonies within the context of the evidentiary record established at trial and considering whether they are sufficiently credible and convincing to make it likely that a new trial would end in a different verdict. *See Padillas*, 997 A.2d at 365; *Rivera*, 939 A.2d at 359. To the extent Appellant argues the court abused its discretion by failing to deem Officer Rosa's testimony wholly unreliable because it is at odds with the after-discovered evidence, we disagree. The jury's credibility determination carries weight in the trial court's present analysis, particularly where the after-discovered evidence consists simply of opposing eyewitness testimony that fails to undermine Officer Rosa's testimonial capacity in any way.

Appellant remained injury free, when Mason acknowledged that he witnessed guards subdue Appellant and place him in their custody. This testimony, according to the Commonwealth, was designed purposely to meet the first-prong burden of showing the testimony was not available for Appellant's trial.

When asked on cross-examination whether it was true that Appellant had been his neighbor at his last place of residence, Mr. Mason answered that he could not remember his last residence before going to prison. Yet, Mason was able on direct examination to describe in detail the sequence of events attendant to the assault. This was, again, in contrast to his inability at times on cross-examination to answer questions regarding his observations of the altercation, claiming in such instances that his view was obscured or that he was returning to his cell in the pod.

The Commonwealth also notes the fortuitous coincidence that two inmates who happened to witness the CFCF Philadelphia assault in question also happened to become inmates with Appellant at SCI Forest, attend the same religious classes as Appellant, overhear Appellant discussing his case, and express to him their mutual surprise at his conviction and their willingness to give exculpatory testimony on his behalf. In that regard, Mr. Mason had no substantive answer to questions asking how he and Williams, who claimed to know each other well, could not have known each had witnessed the brutal assault while purportedly standing about 25 feet from one another, could never have discussed the incident afterward, and could have come to know of

this great coincidence only upon meeting Appellant at a time when he was challenging his judgment of sentence.

The Commonwealth also pointed to other inconsistencies implicating the credibility of the witnesses' testimonies. For example, Mr. Mason claimed he and Mr. Murray had a private conversation near a water fountain just before Murray approached Appellant, but Mr. Williams claims he overheard from about "two car lengths away" Mr. Murray's stated intentions of harming Miller. The witnesses also provided varied accounts regarding the details of their talks with Appellant.

On balance, and in consideration of the governing standard, this record leads us to share the trial court's opinion that the after-discovered testimonies were of an unpersuasive nature, as they suffered from several implausibilities and otherwise failed to undermine directly Officer Rosa's established credibility at trial. For these reasons, we conclude that Appellant's after-discovered evidence claim fails under a fourth prong analysis, to the demise of his request for a new trial.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/20/19