J-A20007-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CLIFFORD ALLEN LOCKE, SR. | : | |
| | : | |
| Appellant | : | No. 1721 WDA 2019 |

Appeal from the Judgment of Sentence Entered September 25, 2019
In the Court of Common Pleas of Mercer County Criminal Division at
No(s): CP-43-CR-0000430-2018

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.: FILED FEBRUARY 05, 2021

Clifford Allen Locke, Sr. appeals from the aggregate judgment of sentence of six to twelve years of imprisonment imposed after a jury convicted him of rape of a child, statutory sexual assault, involuntary deviate sexual intercourse with a child, and aggravated indecent assault of a child. We affirm.

The Commonwealth offered evidence of the following at Appellant's trial. In 2017, N.C. (born in September 2005) moved into her grandfather's house in Sharon, Pennsylvania, with her mother ("Mother") and two brothers. Additional members of her extended family also lived in the residence, including Appellant, who is Mother's uncle. In the early morning of January 28, 2018, Appellant and N.C. were using exercise machinery located in the basement of the house. After N.C. complied with Appellant suggestion that N.C. lie down on a piece of equipment on her stomach, he pulled down her pants and underwear and "put his penis in [her] butt hole." N.T. Trial, 5/14-

16/19, at 40. Appellant eventually stopped after he asked the frightened and confused N.C. whether she wanted him to stop and she answered in the affirmative. N.C. then pulled her pants and underwear back up, went upstairs, woke up Mother, and told Mother what had happened. Mother took N.C. to the local hospital, from which she was taken by ambulance to Children's Hospital in Pittsburgh for examination. Ultimately, Appellant's DNA was found in seminal fluid identified in a rectal swab taken from N.C.

Of relevance to this appeal, during its opening statement at Appellant's subsequent trial, the prosecutor informed the jury that the word "prosecutor," is "not just a title," but is "a noun and a verb." Id. at 26. The Commonwealth elaborated: "The word prosecute as a verb means to push forward, to bring to completion, to see through. So it is my job to see through this case and push it to its completion beyond a reasonable doubt to you the jury that the defendant is guilty." Id. Towards the end of the statement, the Commonwealth continued:

> When all the evidence is completed and presented to you the jury, you will be asked by Judge Wallace to go back in the room that you gathered in this morning, to use your common sense, to use your logic, to use your reason, and to use what you perceive with your five senses to determine the case against the defendant. In other words, I will hand the case over to you to prosecute. It will become no longer my duty, but yours.
>
> [APPELLANT'S COUNSEL]: Objection, Your Honor.
>
> THE COURT: Basis?
>
> [APPELLANT'S COUNSEL]: They don't prosecute.

- 2 -

[THE COMMONWEALTH]: They are seeing it through, Your Honor. That's the verb.

THE COURT: It is opening statements.

[THE COMMONWEALTH]: Thank you, Your Honor.

The case will be handed over to you to determine that the defendant raped [N.C.] in this case. . . .

. . . .

When all that is presented to you, the Commonwealth is confident that you will return a verdict of guilty of rape, of involuntary deviate sexual intercourse, of aggravated indecent assault, and statutory sexual assault. Thank you.

THE COURT: I think I may have told you this at the beginning about curative instructions. A curative instruction is just to point out some bit of evidence and to instruct you not to consider it.

There was an objection in the middle of -- towards the end of the opening statement of the Commonwealth concerning the fact that the Assistant District Attorney . . . referred to the jury as prosecutors. You are not to consider that. You are not prosecutors, you understand that. Use your common sense. You are the jury. He was using that in opening statement, so -- thank you.

Id. at 28-30.

During the trial, Appellant defended the charges by attacking N.C.'s credibility and offering character witnesses on his behalf. Additionally, Appellant took the stand to deny the allegations and to indicate that his genetic material was left in a basement trash bin in a condom he had used with an adult sexual partner, which provided an opportunity to frame him.

However, the jury found Appellant guilty of the crimes detailed above on May 17, 2019.

Following a sexual offender evaluation, Appellant's sentencing hearing was held on September 25, 2019. At the hearing, Appellant made a motion for discharge based upon the length of time that had passed since Appellant's conviction, and N.C.'s father appeared to state that he had "information to prove that [Appellant] didn't rape my daughter[.]" N.T. Sentencing, 9/25/19, at 21. Nonetheless, Appellant was sentenced to an aggregate term of ten to twenty years of imprisonment, which included a mandatory-minimum sentence for Appellant's conviction for rape of a child.

Appellant filed timely post-sentence motions seeking, inter alia, modification of sentence because the Commonwealth did not give appropriate notice of its intent to seek application of a mandatory minimum sentence; an arrest of judgment based upon the late imposition of sentence; a new trial because the verdict was against the weight of the evidence; and a new trial based upon after-discovered evidence. On October 17, 2019, the trial court granted Appellant's motion as to the first issue, modifying his sentence for rape of a child to seventy-two to 144 months of incarceration and leaving unaltered his concurrent sentences on the remaining counts. It denied the balance of his requests.

Appellant filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925. Appellant presents the following questions for our consideration:

1.  Did the trial court err by initially overruling a defense objection, and subsequently giving a sua sponte jury instruction, when the assistant district attorney invited the jury to become the prosecutors during the Commonwealth's opening statement?

2.  Did the trial court err by denying relief on the basis of a result against the weight of the evidence as to whether there was any sexual contact whatsoever between [Appellant] and the alleged victim?

3.  Did the trial court err by failing to grant relief for a violation of speedy sentencing that implicated [Appellant]'s due process rights?

4.  Did the trial court err by failing to permit [Appellant] to have an evidentiary hearing on newly-discovered[ ]evidence that became available at the time of [his] sentencing hearing?

Appellant's brief at 3-4.

Appellant first contends that "[t]he trial court erred by offering only a sua sponte curative instruction instead of ordering a mistrial following the Commonwealth's impermissible opening statement." Appellant's brief at 13. Specifically, Appellant complains that the portion of the Commonwealth's statement quoted supra was "an outright invitation to a jury to abandon their role as a neutral finder of fact, and take up the banner of the prosecution." Id. at 13-14.

We begin with a review of the applicable law. "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a

- 5 -

nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." Commonwealth v. Powell, 171 A.3d 294, 301 (Pa.Super. 2017) (internal quotation marks omitted). We review the decision to grant a mistrial for an abuse of discretion. See Commonwealth v. Kelly, 797 A.2d 925, 936 (Pa.Super. 2002).

Pennsylvania appellate courts have repeatedly held that where "defense counsel lodged an immediate objection to the [event forming the basis of the appellate argument for a mistrial], which was sustained by the trial court, and defense counsel did not request a mistrial or further curative instructions, the issue has been waived." Commonwealth v. Le, 208 A.3d 960, 978 (Pa. 2019). See also Commonwealth v. Jones, 460 A.2d 739, 741 (Pa. 1983) (same); Commonwealth v. Sandusky, 77 A.3d 663, 670 (Pa.Super. 2013) ("Sandusky did not move for a mistrial or request a curative instruction; he merely lodged an objection. As such, this claim is not preserved for appellate review.").

As demonstrated by excerpt of the Commonwealth's opening statement reproduced above, Appellant objected to the Commonwealth's play on the word prosecute, but did not request either a mistrial or a curative instruction. Nonetheless, the trial court opted to remind the jurors of their role, which was not to act as prosecutors. See N.T. Trial, 5/14-16/19, at 29-30. Appellant did not object to the trial court's cautionary statement or request any

additional instruction. Accordingly, Appellant has not preserved his first claim for appellate review. See Commonwealth v. Strunk, 953 A.2d 577, 579 (Pa.Super. 2008) ("It is well established that trial judges must be given an opportunity to correct errors at the time they are made. . . . Even where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver.").

Next, Appellant argues that the trial court erred in denying his request for a new trial based upon the weight of the evidence. We consider Appellant's arguments while being mindful of the following legal principles:

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Commonwealth v. Clay, 64 A.3d 1049, 1054-55 (Pa. 2013).

The trial court addressed Appellant's weight claim as follows:

> Here, the jury heard the testimony given supporting each element of the charged offense, including penetration, and made its determination of the credibility of each witness including the victim. They accepted the testimony presented by the Commonwealth, including that of the victim as proving the truth of the charges against [Appellant]. This result not only does not "shock one's sense of justice," it is precisely the aim sought by a jury trial. To overturn the verdict in this situation would have required the [c]ourt to substitute its own judgment of credibility for that of the jury.

Trial Court Opinion, 3/13/20, at 3.

Appellant argues that he is entitled to relief on his weight claim because "[N.C.'s] testimony was so impaired that the verdict of guilt based on her accusations shocks ones sense of justice sufficiently to justify a new trial[.]" Appellant's brief at 16. Specifically, Appellant contends:

> N.C.'s testimony about the alleged assault, including the improbably instantaneous manner in which it supposedly occurred, as well as her disclaiming of any pain under the circumstances she described, strains credulity. Her repeated evasiveness on any question that might portray her negatively impugns her credibility even further. Her demonstrable lies in response to certain questions, like whether she had been caught sending inappropriate photographs to another individual, are all the more reason to discount her statements. She could clearly be motivated to lie, even for trivial matters. It is not difficult to come to the conclusion that, in combination with her mother, who admittedly possessed a "mean streak[,]" she could have fabricated her account and used subterfuge to harm [Appellant].

Id. at 16-17.

Notably absent from Appellant's argument is any allegation that the trial court's failure to conclude that the verdict shocked its conscience was the product of an error of law, was manifestly unreasonable, or was "a result of partiality, prejudice, bias or ill-will." Clay, supra at 1055 (internal quotation marks omitted). Rather, it would appear that Appellant seeks to have this Court do what our Supreme Court has expressly forbid: to independently consider "the underlying question of whether the verdict was against the weight of the evidence" and to substitute our own conclusions as to the propriety of the jury's credibility and factual determinations. Id. at 1056-57.

We may not and shall not.  Accordingly, Appellant is entitled to no relief from this Court on his weight-of-the-evidence claim.

In his third issue, Appellant asserts that he is entitled to a new trial based upon the violation of his speedy-sentencing rights under Pa.R.Crim.P. 704(a).  The Rule states as follows:

> (A) Time for Sentencing.
>
> (1) Except as provided by Rule 702(B), [providing that a court may order a psychiatric or psychological evaluation prior to sentencing,] sentence in a court case shall ordinarily be imposed within 90 days of conviction or the entry of a plea of guilty or nolo contendere.
>
> (2) When the date for sentencing in a court case must be delayed, for good cause shown, beyond the time limits set forth in this rule, the judge shall include in the record the specific time period for the extension.

Pa.R.Crim.P. 704.  The Comment to the Rule further elucidates its application. Specifically, it indicates that, under subsection (A)(1), an order for an evaluation "should extend the time for sentencing for only as much time as is reasonably required, but in no event should sentencing be extended for more than 30 days beyond the original 90-day limit."  Id. at Comment, Time for Sentencing.  Additionally, the Comment provides that good cause for an extension beyond the ordinary ninety-day timeframe under subsection (A)(2) may be provided by statutory requirements such as "pre-sentence assessment and hearing procedures for persons convicted of sexually violent offenses." Id.

The purpose of Rule 704 is not to establish an arbitrary, clerical deadline. Rather, we have observed that "[p]rotecting the accused from inexcusable or intentional delay on the part of the court or the Commonwealth, the 'whim' or power of the state, is the underpinning of the right to a speedy trial." Commonwealth v. Diaz, 51 A.3d 884, 889 (Pa.Super. 2012).

> The appropriate remedy for a violation of . . . Pa.R.Crim.P. 704, is discharge. However, the remedy does not automatically apply whenever a defendant is sentenced more than ninety days after conviction without good cause. Instead, a violation of the ninety-day rule is only the first step toward determining whether the remedy of discharge is appropriate.
>
> . . . .
>
> A defendant who is sentenced in violation of . . . Pa.R.Crim.P. 704, is entitled to a discharge only where the defendant can demonstrate that the delay in sentencing prejudiced him or her. To determine whether discharge is appropriate, the trial court should consider:
>
> (1) the length of the delay falling outside of the 90–day–and–good–cause provisions; (2) the reason for the improper delay; (3) the defendant's timely or untimely assertion of his rights; and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights. Prejudice should not be presumed by the mere fact of an untimely sentence. Our approach has always been to determine whether there has in fact been prejudice, rather than to presume that prejudice exists. The court should examine the totality of the circumstances, as no one factor is necessary, dispositive, or of sufficient importance to prove a violation.

Id. at 887 (cleaned up) (quoting Commonwealth v. Anders, 725 A.2d 170, 172-73 (Pa. 1999)).

Appellant was found guilty on May 17, 2019. Ninety days thereafter was August 15, 2019. The trial court ordered a presentence investigation

report and an evaluation by the Sex Offender's Assessment Board ("SOAB"). To give sufficient time for those tasks to be completed, the trial court stated its intention to schedule Appellant's sentencing for August 2, 2019. See N.T. Trial, 5/17/19, at 60. Counsel for Appellant indicated that he would be out of town, returning on August 9, 2019. Id. The trial court observed that that date was close to the ninety-day mark, but Appellant, though counsel, expressly waived the ninety-day requirement. Id. at 61. Accordingly, the trial court scheduled sentencing for August 9, 2019, and also revoked Appellant's bond.

Thereafter, Appellant obtained new counsel, who moved for Appellant to be allowed to serve house arrest while awaiting sentencing. The basis for the request was the lack of adequate medical treatment at the Mercer County Jail. The trial court granted Appellant's motion. However, a week later, bond was revoked after entertaining the Commonwealth's motion for reconsideration.

On August 8, 2019, the trial court continued the sentencing hearing because the SOAB had not completed its evaluation of Appellant. After receiving SOAB's report, the trial court rescheduled the sentencing hearing for September 25, 2019, which was 131 days after Appellant's conviction. At the outset of the hearing, Appellant moved for discharge pursuant to Rule 704(A)(1), citing as prejudice the lack of adequate medical care he received during presentence incarceration in violation of his Eighth Amendment rights.

See N.T. Sentencing, 9/25/19, at 6. Counsel raised an additional issue before the trial court ruled on the Rule 724 motion. However, since the court proceeded to sentencing rather than ordering Appellant's discharge, it implicitly denied it.

In this Court, Appellant recognizes that the sex-offender evaluation served as a proper basis to extend the deadline from ninety to 120 days, and "acknowledges that the delay past the 120 days contemplated by the rule was not particularly long[.]" Appellant's brief at 18. However, he maintains that the rule has been violated and that he is entitled to relief, arguing that "the deprivation of speedy sentencing, which extended the time he spent in a jail incapable of adequately addressing his medical needs, prejudiced him in the exercise of a constitutionally protected due process right, and justifies discharge per Anders[, supra]." Id. at 19.

The trial court opined that Appellant's claim did not merit relief because a sex-offender evaluation constitutes good cause to extend the time for sentencing. See Trial Court Opinion, 3/13/20, at 5. The trial court addressed Appellant's prejudice contentions as follows:

> [Appellant]'s claim of prejudice rests on his medical condition and the lack of treatment available at the county jail where he was held. Even if this constitutes prejudice within the meaning of Rule 704[,] the court has already remedied it by allowing [Appellant] to transfer into house arrest specifically so that he would be able to get necessary medical care. Since [Appellant] was convicted of multiple serious crimes and was effectively certain to receive several years in prison he can hardly be said to have suffered substantial prejudice by serving 130 days of that time before the sentencing proceedings while awaiting his

> sex offender risk assessment, which the defense admits was required.

Trial Court Opinion, 3/13/20, at 6 (unnecessary capitalization omitted).

We discern no error of law or abuse of discretion on the part of the trial court. The delay beyond the timeframe suggested by the Comment to Rule 724 was minimal and for an acknowledged good cause. See Pa.R.Crim.P. 724 at Comment, Time for Sentencing. Although the order scheduling sentencing for September 25, 2019, was filed on August 26, 2019, Appellant did not raise his speedy-sentencing claim until the day of the hearing itself. Finally, Appellant has not demonstrated that he was prejudiced within the meaning of Rule 724, as he received credit for all the time he served, did not spend any more time in custody that he would have had he been sentenced eleven days earlier, and points to no lost opportunity or permanent injury he suffered as a result of the medical care available during the eleven days in question. See Commonwealth v. Null, 186 A.3d 424, 433 (Pa.Super. 2018) (holding defendant did not demonstrate prejudice where the sentencing delay did not prevent "him from presenting witnesses or evidence" relevant to his sentence); Commonwealth v. Adams, 760 A.2d 33, 38 (Pa.Super. 2000) (ruling that the defendant was not prejudiced because the Commonwealth gained no advantage by the delay, "he got credit for the time spent, and he did not spend anymore time incarcerated than he would have had the sentence been earlier"). No relief is due.

Finally, Appellant asserts that the trial court erred in denying without a hearing his claim that he was entitled to a new trial based upon after-discovered evidence. To obtain a new trial based upon after-discovered evidence, a defendant must satisfy a four-prong test, namely that: "(1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely." Commonwealth v. Heaster, 171 A.3d 268, 273 (Pa.Super. 2017). "In addition, the proposed new evidence must be producible and admissible." Commonwealth v. Castro, 93 A.3d 818, 825 (Pa. 2014).

A defendant's after-discovered-evidence motion must be based upon the "actual discovery of actual evidence, not merely the possibility of such evidence." Id. at 828. "Indeed, the hearing is for the presentation of evidence, not the potential discovery of evidence." Id. at 827-28. Although the motion need not "attach affidavits or other offers of proof," it "must, at the very least, describe the evidence that will be presented at the hearing" on the motion. Id. at 827. In the absence of such a showing, the motion may be denied without a hearing. Id. at 828.

The trial court offered the following explanation for its decision to deny Appellant's claim:

[Appellant]'s motion for new trial, when presented to the court, did nothing but allege the existence of evidence that the victim's mother had told others that she "was responsible for the [Appellant]'s legal calamity, and that she possessed the capability to cause the same type of outcome." Thus, all the motion included was allegations of hearsay statements made by the victim's mother. These assertions are not sufficient even to conduct [the four-prong test,] let alone find in favor of [Appellant].

Trial Court Opinion, 3/13/20, at 7.

Appellant in his brief offers no augmented description of the evidence that prompted his motion. He merely reproduces the pertinent portion of his post-sentence motion which stated as follows: "There appears to be evidence that the alleged victim's mother has made statements to multiple individuals, including [Appellant's father] and [W.C.], that she was responsible for the [Appellant]'s legal calamity, and that she possessed the capability to cause the same type of outcome to the aforementioned individuals." Appellant's brief at 19. He argues that

if this matter were brought to an evidentiary hearing, [Mother] could either be directly confronted with the allegations and could testify to them if available, or her out of court statements could be offered in her absence [pursuant to the statements-against-interest exception to the rule against hearsay] if her presence was unable to be secured.

Id. at 20.

We find Appellant's arguments unavailing. Specifically, from Appellant's vague assertions, which lack any concrete description of what Mother said or when she said it, it is impossible to discern whether the new evidence is merely corroborative or cumulative, whether it is solely material for impeachment, or

whether it is likely to change the outcome of the trial.[1]  Moreover, Appellant does not explain why he could not have obtained this information from his own father or from W.C. before trial, nor does he indicate what efforts he made after the sentencing hearing to discover more exactly what Mother said. In short, we agree with the trial court that Appellant's motion offered insufficient information to warrant even a hearing.  See Heaster, supra at 274-75 (holding trial court properly dismissed after-discovered evidence motion where the defendant did not identify or describe the precise evidence at issue, but merely argued that there was evidence on his co-defendant's mobile phone and made "vague and conclusory assertions [that were] insufficient to meet the benchmarks necessary to warrant a hearing"). Therefore, Appellant's final issue merits no relief.

Judgment of sentence affirmed.

_____

[1] Appellant argues that the evidence is not merely cumulative, and not solely impeachment evidence, because at trial "[Appellant] was only able to show mere opportunity to obtain the used condom to set him up, but this evidence would be an affirmative statement demonstrating an actual scheme to do so - evidence that was absent at trial."  Appellant's brief at 21.  Clearly, the merit of this argument is incapable of adjudication in the absence of a more precise description of Mother's statements.  We reiterate that Appellant was required to discover evidence in order to demonstrate that a hearing is warranted, not to merely ask for a hearing to allow him to potentially discover evidence.  See Commonwealth v. Castro, 93 A.3d 818, 827-28 (Pa. 2014) ("[T]he hearing is for the presentation of evidence, not the potential discovery of evidence.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/5/2021